HAWKEYE CLAY WORKS, Appellee, v. GLOBE & RUTGERS FIRE INSURANCE COMPANY, Appellant, et al., Appellee.

PLEADING: Answer—Plea Without Proof. A defensive plea without
1    proof availeth nothing.

INSURANCE: Agents—Dual Agency—Effect. In an action on a policy,
2    a defensive plea that the agent who issued the policy was, without the knowledge of the insurer, interested in the property insured, becomes quite immaterial when it appears that, subsequent to the issuance of the policy, and at a time when the issuing agent had been discharged, the insured, for a new consideration, materially modified the contract.

INSURANCE:  Avoidance of Policy—Failure to Operate Plant—Avoid-
3 ·ance.  Policy provision reviewed, and held clearly to avoid the effect
of the non-operation of a manufacturing plant.

Headnote 1:  31 Cyc. p. 675.  Headnote 2:  32 C. J. p. 1055.  Head-
note 3:  26 C. J. p. 207.

*Appeal from Webster District Court.—*G. D. Thompson, Judge.

## JANUARY 18, 1927.

Action. at law, to recover fire loss on a $15,000 insurance
policy.  The Iowa Savings Bank of Fort Dodge, as intervener,
sought to establish its mortgage claim against the insured
property.  Cause tried to a jury, the trial resulting in a verdict
for the plaintiff in the sum of $14,000.  Subsequently, judgment
was entered in this amount, awarding to the intervener an
amount equaling the mortgage indebtedness, to wit, $12,305.37,
with interest.  Defendant appeals.—*Affirmed.*

*Healy & Breen,* for appellant.

*Healy, Thomas & Healy* and· *Kelleher & Mitchell,* for ap-
pellee Hawkeye Clay Works.

*Frank Maher* and *Horace Van Metre,* for appellee Iowa
Savings Bank.

De Graff, J.—On July 21, 1923, the defendant-insurance
company issued to the plaintiff a policy of fire insurance for
$15,000 on the building, other structures, and contents thereof
constituting its plant, known as the Hawkeye
Clay Works, located at Fort Dodge, Iowa.  On
April 15, 1924, certain indorsements or riders,
presently noted, were attached to said policy.  On April 22,
1924, the plant was destroyed by fire.

1. PLEADING: .
answer: plea
without proof.

Affirmative defenses are pleaded, but no witnesses were
called by the defendant to sustain said defenses.  Did the evi-
dence offered by the plaintiff obviate the necessity on the part
of the defendant of offering any evidence?  The primary claim
of the defendant is that of "dual agency," and interlocked
with this defense is the fact that the property was mortgaged
by the insured after the issuance of the policy to the insured.

The defendant also alleges fraud in the inception of the contract in misrepresenting to the insurance company that the subject of the insurance was used as a manufacturing plant; whereas, it was not in active operation from and after the middle of the summer of 1922.

It appears without dispute that, at the time of the issuance of the policy, James Kempley & Sons were acting as the agents of the defendant in the city of Fort Dodge; and that at said time James Kempley was financially interested, as a stockholder, in the property of the said Hawkeye Clay Works, a corporation. It is pleaded by the defendant in answer:

2. INSURANCE: agents: dual agency: effect.

"That the said defendant-company had no knowledge whatever that the said James Kempley was interested in any manner whatsoever in the said Hawkeye Clay Works until after said property was destroyed by fire, on or about the 22d day of April, 1924; and that, as soon as the defendant-company was advised of the interest of the said James Kempley in and to the insured property, the said defendant-company immediately and forthwith canceled and rescinded said contract of insurance, and tendered to said Hawkeye Clay Works the amount of the premium which they had heretofore paid on said policy."

This is but an allegation in the answer. There is no proof whatsoever that the defendant rescinded the contract, or that any sum was, in fact, tendered to the insured.

It is the general rule that an agent of an insurance company who is interested as an owner of property or as a stockholder or officer of a corporation owning it, cannot bind his principal who is ignorant of that fact, by a contract of insurance. This rule is predicated on the theory that an agent cannot be permitted to put himself in a position where his own interests are antagonistic to those of his principal, and he cannot, as such agent, have his principal transact business for his own behalf. *Nertney v. National Fire Ins. Co.*, 199 Iowa 1358; 32 Corpus Juris 1055. However, a policy issued by a fire insurance agent to himself, or as one having an interest, is not absolutely void, but is merely voidable. *Twin City Fire Ins. Co. v. Stockmen's Nat. Bank*, 261 Fed. 470; *Arispe Merc. Co. v. Queen Ins. Co.*, 141 Iowa 607; *Harland v. Liverpool & London & Globe Ins. Co.*, 192 Mo. App. 198 (180 S. W. 998).

Does the mere invocation of this legal principle cause the defendant to win? We think not, under the circumstances. The burden was upon the plaintiff to prove, by a preponderance of the evidence, that the defendant-insurance company, acting through its duly authorized officers and agents, executed and delivered to the plaintiff-company the insurance policy in suit; that the plaintiff suffered loss directly by fire, as alleged; and the amount of said loss. Plaintiff, therefore, is entitled to the verdict recovered unless the defendant has established one of its pleaded affirmative defenses.

Pleading is not proof, and the burden was on the defendant to show performance upon its part of the duty resting upon it in the pleaded premises. The defendant's answer was based on the theory that the policy was voidable, but the claim now is that the contract was void and unenforcible *ab initio*. It was upon the defendant, not only to establish the dual agency, but to offer proof of rescission and of a tender of the return of the consideration received. The latter is a condition precedent to rescission. An insurance company must act consistently in a matter of this kind, and if it declares its intention to rescind, it must return the premium or make a valid tender thereof.

Plaintiff in the first instance had the burden of proving the existence of the policy, the loss of the insured property by fire, and that it gave due proof of said loss. These matters are clearly established by the proof. In the absence of evidence to the contrary, it will be presumed that a policy in possession of plaintiff was duly executed and duly and properly delivered to it by the insurance company, as a valid and binding contract, and that it was duly accepted by the insured. 33 Corpus Juris 104.

The policy of insurance was admitted in evidence without objection. No burden rested upon the plaintiff to offer matters negativing an anticipatory defense. If plaintiff established a prima-facie case, it was entitled to go to a jury, and it was upon the defendant to prove all matters of defense and to rebut a prima-facie case established by the plaintiff. *Jones v. United States Mut. Acc. Assn.*, 92 Iowa 652. No proofs by the plaintiff are required unless they are necessary matters of averment; and if they are necessary, and are not averred, and the omission is passed unchallenged by demurrer, the averments, as well as the

proofs, are waived.  *Sutherland v. Standard Life & Acc. Ins. Co.,* 87 Iowa 505; *Smith v. American Ins. Co.,* 197 Iowa 761.

The policy in suit is an Iowa standard form, and it remained such until the end.  The record discloses that, on April 15, 1924, the said policy was changed and modified by riders attached to the face of the policy.  These indorsements became a part of the contract.  *Scharles v. Hubbard Jr. & Co.,* 74 Misc. Rep. 72 (131 N. Y. Supp. 848).  These indorsements eliminated and canceled the co-insurance agreement in said policy, and also made "any loss under this policy payable to Iowa Savings Bank of Fort Dodge, Iowa, mortgagee, and the assured, as their respective interests may appear."  It may further be observed that this indorsement acknowledged the receipt of an additional premium for the new and modified insurance contract of April 15, 1924.  These indorsements were in conformity to Sections 9017 and 9018, Code of 1924, and the policy in suit, with the riders attached, must be recognized as an Iowa standard form of policy.  It would be indeed difficult for an insurance company to operate without the privileges defined in the sections cited.

The fact stands that the defendant-insurance company did, for an additional premium paid to and retained by it on April 15, 1924, cause to be indorsed upon the policy provisions which modified and supplemented the previously existing policy.  It is well recognized in all cases of insurance policies that a rider of itself supersedes the policy itself.  *New York & P. R. S. S. Co. v. Aetna Ins. Co.,* 192 Fed. 212; *Lancaster v. Southern Ins. Co.,* 153 N. C. 285 (69 S. E. 214, 138 Am. St. 665).

An agreement, when changed by the mutual consent of the parties, becomes a new agreement.  It takes the place of the old.  A contract may be abrogated in part, and stand as to the residue.

The pivotal question under the instant facts is whether or not a dual agency existed when the new contract was executed, on April 15, 1924.  It is true that a contract once made cannot be modified except by a new meeting of minds; but when such a mind meeting occurs, a new contract springs into existence.  *United Trans. & L. Co. v. New York & B. Trans. Line,* 180 Fed. 902, 185 Fed. 386.

The rights of the plaintiff herein must be determined under

the terms of the later contract, and, if the dual agency at that time ceased to exist, it does not constitute a defense.

The plaintiff, in its reply to the answer of the defendant, pleaded waiver, and it was admitted by the defendant, upon the trial of this cause, that the intervener, Iowa Savings Bank of Fort Dodge, had a due, legal, valid, existing, and unpaid mortgage upon the property and plant of the plaintiff described in the insurance policy. The rider in question is indorsed in these words: "J. L. Kempley, Agent, By E. C. C."

During the progress of the trial, there was some colloquy between counsel with relation to the calling of certain witnesses, for the reason that it was not shown who personally made the indorsement. It was squarely admitted that Kempley was not the agent of the defendant-company on April 15, 1924, when the indorsements were attached to the policy. It does appear that the defendant had served a notice, known as Exhibit B, during some preliminary proceedings in this case, but we do not find that the notice was introduced in evidence. It does appear, however, that certain words of this exhibit, subject to objection, were read into the record by the plaintiff, to wit:

"Subsequently said agency was taken from the said Kempley & Sons and given to one E. C. Codner, in the city of Fort Dodge; that, at a later date, after said agency was transferred from the said Kempley & Sons to the said Codner, the said Hawkeye Clay Works apparently annulled or canceled the co-insurance clause in said original policy, and paid an additional premium of $18.82, and remittance was made to said company of the said additional premium, under the cancellation of the co-insurance clause."

The language admitted was in the nature of an admission, and to the effect that E. C. Codner was the agent of the insurance company in the city of Fort Dodge subsequently to the agency of Kempley & Sons. We do not view the form of signature on the indorsement as a controlling consideration. The fact that the name of J. L. Kempley appeared on the indorsement cannot alter the fact, as is shown by the undisputed evidence, that Kempley was not the agent for the company at that time, but that E. C. Codner, whose initials are appended to said indorsement, was then acting.

The premium of $18.82 was admittedly an additional pre-

mium paid to the insurance company for the modification of the contract. It may not be said that this premium was received through Kempley, because he was no longer the company's agent; and the policy in suit, when admitted in evidence, not only contained the terms of the original contract, but included the riders of date April 15, 1924; and as it then stood, it was a contract to insure the property, with the co-insurance clause eliminated, and with an indorsement with loss payable to a defined mortgagee.

We must presume that the defendant-company knew its own agent; and it took no exception to the character of the signature on the indorsement when it agreed, for a consideration, to change the original contract and thereby create a new contract. Briefly stated, the defendant-company did plead its right and duty under the circumstances, but failed to offer any evidence in support thereof. The instructions of the trial court were in conformity to the proof, and they are not subject to legal criticism in this particular.

What is herein said relative to the absence of proof with respect to rescission and tender is also applicable to the defense of fraud pleaded by defendant in the character of the representation made when the policy issued.

It is further contended by the appellant that the failure on the part of the plaintiff to operate its brick plant during the life of the insurance in question constitutes a bar to recovery. The standard form of policy provides:

"Unless otherwise provided by agreement of this company this policy shall be void: * * * (b) If the subject of insurance be a manufacturing establishment, and it cease to be operated for more than ten consecutive days; or (c) if the buildings herein described, whether intended for occupancy by the owner or tenant, be or become vacant or unoccupied and so remain for ten consecutive days."

3. INSURANCE:
avoidance of
policy: failure
to operate
plant: avoidance

Was it otherwise provided by the agreement, both as to vacancy and cessation of operation? The stipulation in the policy reads as follows:

"Permission granted to make additions, alterations and repairs to building and contents, this insurance to cover thereon and therein, and to employ mechanics for such periods in excess

of fifteen consecutive days as may be necessary to complete same; to operate all hours day and night and to cease operations and remain vacant for such periods in excess of ten consecutive days as the exigencies of the business may require."

There was no claim of any kind on the part of the defendant, either in pleading or in evidence, that the exigencies of the business did not warrant cessation of operation. The defendant offered no proof to sustain the burden resting upon it to establish this defense, and it was pleaded in the answer that it (insurance company) "specifically and expressly denies that there was any agreement or permit issued providing for the vacating of said plant or the ceasing to use same for a period of ten days or any other period as a manufacturing plant." The admitted policy of insurance was to the contrary, and it is apparent, therefore, that there was nothing for the court to submit to the jury in this particular.

The plaintiff had no burden to prove anything other than its policy. No obligation rested upon it to prove the various steps which led to the consummation of the contract. A contract was made. It is in evidence, without objection, and this admission clearly constituted a waiver of any preliminary proof of its due execution. When the contract was admitted, it went to the jury for all purposes, and it must be taken and accepted according to its terms. The contract must be viewed as an entirety. It is what it appears to be on the face, and the indorsements thereon are as much a part of the policy as any provision therein unmodified by an indorsement or rider. Due proof of loss was admitted. We feel that the plaintiff met its burden, and when it rested, had established a prima-facie case. Mere denials in answer do not meet the requirement of proof of any defense pleaded.

The judgment of the trial court is—*Affirmed*.

EVANS, C. J., and STEVENS, VERMILION, ALBERT, and MORLING, JJ., concur.