FEDERAL SAVINGS AND LOAN IN-
SURANCE CORPORATION, a
corporation, Plaintiff,

v.

AETNA INSURANCE COMPANY, a
corporation, Defendant.

No. 66 C 1176.

United States District Court
N. D. Illinois, E. D.

Feb. 20, 1968.

McCarthy, Witry, Lyon & McCarthy, Chicago, Ill., for plaintiff.

Dent, Hampton & Doten, Chicago, Ill., for defendant.

## MEMORANDUM ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ROBSON, District Judge.

Plaintiff moves for summary judgment in this declaratory judgment suit for construction of a fidelity savings and loan blanket bond issued by the defendant, insuring against defalcations by the officers of the Beverly Savings and Loan Association. The Bank's obligations were insured by the plaintiff, which assumed them when the Bank liquidated.

The alleged multiple misdeeds of Howard B. Quinn, the director and chairman of the Board of the Bank, are the bases for the instant suit and other suits [1] pending in this court. Many of

1. 65 C 512, 65 C 1197, 65 C 1729 and 66 C 999.

the facts of this controversy are stated in the February 28, 1967, memorandum of Judge Hubert L. Will wherein he denied defendant's motion to dismiss the suit.

The very narrow issue is whether defendant's liability under Section 6 of the bond is limited to $470,000 for *all* of Quinn's defalcations, or whether a sum up to that limitation is recoverable for each instance of loss due to his misconduct. Section 6 provides:

*"Non-Reduction of Liability.* * * Payment of loss under this bond shall not reduce the liability of the Underwriter under this bond for other losses whenever sustained; PROVIDED, however, that the total liability of the Underwriter under this bond on account of * * * (c) *any loss* other than those specified in (a) and (b) preceding, caused by acts or omissions of any one person * * * or acts * * * in which such person is concerned or implicated. * * *" (Italics supplied.)

The plaintiff draws favorable inferences from the fact that prior to September, 1960, subsection (c) had read "any loss *or losses*" and therefore it is evident from the deletion of the word "losses" that the $470,000 limitation was not intended to ceiling a *plurality* of losses, but only that of a *particular* loss. Defendant says that the "substitution was made in the interests of clarity and simplicity because it understood and believed that the word 'loss' is a generic term which includes both the singular and the plural. * * * No change in coverage was intended thereby." Defendant's position is supported by the affidavit of John F. Fitzgerald, secretary of the Surety Association.

Defendant states the revision in the language was merely an "editorial" change as evidenced by the fact that the deletion was not even noted or explained in the statement covering the bond revisions.

Plaintiff relies heavily on the established principle that where there is an ambiguity in an insurance instrument it is construed against the party who drafted it. Paddleford v. Fidelity & Casualty Co. of New York, 100 F.2d 606 (7th Cir. 1938).

The form of the bond was drafted and issued by the Surety Association of America in collaboration with the United States Savings & Loan League as Standard Form Number 22, Revised to September, 1960. Defendant was a member of that Association whose members are surety companies.

Plaintiff in its complaint cites the statement in the Manual of the Association:

## "BLANKET BONDS–FINANCIAL INSTITUTIONS

Scope of Coverage.

Limit of Liability for Single Loss— Non Reduction of Liability.

Coverage under each bond is written for a specific amount which is the limit of liability for any single loss, as that term is defined in the bond, but any number of separate losses may be recovered subject to the applicable provisions of such bond."

Defendant denies the relevancy or materiality of the statement in the Manual in the interpretation of the policy, which is expressly stated to be merely a guide to the general coverage of the bonds. Defendant states the bond at the time it was rewritten had been operating at an underwriting loss. An analysis by the Association, sent plaintiff October 14, 1960, made of the bond after revision, included the statement under the caption "Liability Under This Bond and Prior Insurance": "Apart from some editorial changes, the provision is the same as that contained in the prior edition of this bond. * * *"

Defendant also cites the fact that the Manual provides:

"Coverage under each bond is written for a specific amount which is the limit of liability for any single loss, as that term is defined in the bond, but any number of separate losses may

be recovered subject to the applicable provision of such bond."

Defendant notes that there is no showing that the Bank or plaintiff ever saw or was influenced by the Manual provisions.

It is defendant's belief that plaintiff is seizing "upon the construction upon which it depends as a fortuitous circumstance to recover in excess of $3,250,000 under a $470,000 bond" for which a premium of only $1,523 a year was paid. There was no increase in the premium of the bond at the time of the revision of the words defining coverage limitation. Plaintiff's position is an "afterthought."

Defendant argues strenuously that the word "loss" is a "generic" term including the plural as well as the singular, citing dictionary and case definitions. It points out the continuous use of the word "loss" in the policy as encompassing singular as well as plural losses, an aggregate or accumulation of losses.

Defendant cites as supportive of its position the case of State Savings Bank v. Hartford Accident & Indemnity Company, decided July 8, 1953, by the Court of Appeals of Tennessee (unreported), wherein the coverage was held limited to $30,000 for one employee although he in conjunction with another employee caused further losses in excess of the limitation. That court construed "any" to be generic and "indefinite; it had been construed according to context to mean one, more than two, many, every, all."

Defendant believes that not only is this policy not ambiguous, but if there be doubt as to the real intention, the interpretation which plainly leads to injustice should be rejected. A construction cannot be given the bond which was not intended by the parties, but it must be enforced to carry out their intent. An insurance contract is to be construed in the same manner as any other contract. Potomac Insurance Company v. Stanley, 281 F.2d 775 (7th Cir. 1960). An insurance contract is to be construed as a whole, each provision being given effect. Bankers Life Company v. International Telephone & Telegraph Corporation, 239

F.2d 621 (7th Cir. 1956); Gay v. S. N. Nielsen Co., 18 Ill.App.2d 368, 152 N.E. 2d 468 (1958). Nor should the language of the bond be "perverted" under the guise of construction to create a right not intended by the parties. Cook v. Suburban Casualty Co., 54 Ill.App.2d 190, 203 N.E.2d 748 (1964).

Plaintiff points out as significant that the words "or losses" were omitted in several other sections of the bond as indicative of a purposeful change to make "the limit of liability apply to a single loss, rather than to losses in the aggregate." It further points to the decision of Fidelity Trust Co. v. American Surety Co. of New York, 268 F.2d 805 (3rd Cir. 1959), in which it was said, at 807:

"* * * The form [of blanket bond] was offered as a contract by large professional surety companies who certainly know what they are doing. We cannot think that it has not been very carefully drafted or that the draftsman put in words to mean nothing."

Plaintiff relies heavily on the case of Humboldt Trust & Savings Bank v. Fidelity & Casualty Company of New York, 255 Iowa 524, 122 N.W.2d 358 (1963), wherein the non-reduction clause of the policy was somewhat similar to the instant one before the 1960 revision. An official had committed several forgeries over a period of years, the total of which exceeded the $2,500 maximum limitation. It was held the $2,500 limitation applied to each forgery. Plaintiff feels the present case is even stronger.

The court concludes that the defendant's construction of the bond is the more plausible one, due to the fact that in the preceding subsections (a) and (b) the drafter of the bond specified the coverage as to "any loss caused by *any one act*" and in subsection (c), here involved, he uses the terms "any loss * * * caused by *acts* in which such person is concerned." (Italics supplied.) The court believes the word "acts" in the plural was used advisedly, and it was the intent of the insurer to limit its liability as to any one officer to the specified

amount. Although the bond had previously used the phrase "any loss or losses" it is perfectly possible that the revision was an editorial change as defendant states, in view of the fact that "any" is sometimes a synonym for "all." Webster's New International Dictionary, Second Edition, Unabridged, p. 121. Further credence is lent to defendant's interpretation by the fact that the change was not noted in the Manual and therefore the inference is that it was not deemed of importance. The most telling argument is the one that the bond was already being written at an underwriting loss. It seems hardly probable that the insurer would therefore volunteer to multiply its possible liability with no increase in premium.

The plaintiff's motion for summary judgment is therefore denied.