**ROODHOUSE NATIONAL BANK,**
Plaintiff-Appellee,

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant-Appellant.**

No. 17959.

United States Court of Appeals, Seventh Circuit.

May 28, 1970.

Rehearing Denied July 8, 1970.

John P. Hampton, Dent, Hampton & Doten, Chicago, Ill., James E. McDaniel, Barnard, Timm & McDaniel, St. Louis, Mo., for defendant-appellant.

Jewell I. Dilsaver, Joseph R. Spitz, Dilsaver, Gilkerson & Spitz, Mattoon, Ill., Harvey B. Stephens, Brown, Hay & Stephens, Springfield, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and KILEY and KERNER, Circuit Judges.

SWYGERT, Chief Judge.

Roodhouse National Bank brought this diversity action against Fidelity and Deposit Company of Maryland seeking recovery under a Bankers' Blanket Bond issued by Fidelity. The district court held that losses sustained by Roodhouse in connection with the purchase by the bank of 161 fictitious retail installment contracts from B. L. Adkins were covered by Clause B of the bond and awarded judgment in favor of Roodhouse in the amount of $165,055.05 plus interest at five per cent. Fidelity appeals, urging the acts committed by Adkins constitute forgery within the meaning of the bond and that recovery should thereby be limited to $25,000 under Rider 627 and Clause E of the bond. We reverse and direct the entry of judgment in favor of Roodhouse for $25,000.

The facts are not in dispute. On November 25, 1964 Fidelity issued Bankers' Blanket Bond Standard Form No. 24, with riders attached, to Roodhouse. Coverage included losses discovered after the purchase of the bond. In November 1961 B. L. Adkins, a used car dealer in White Hall, Illinois, opened an account at the Roodhouse National Bank. In September 1962 Adkins began assigning retail installment contracts to the bank. Some contracts were assigned with recourse, others without recourse. All contracts were identical except for the name of the purchaser, the description of the vehicle, the sale price, and the finance charges. In each contract the signature of the purchaser was signed by Adkins, the name of the purchaser was fictitious, and the vehicle described was not in existence.

Adkins personally assigned each contract to Roodhouse in the presence of bank officers on bank premises. In return for an installment contract the bank deposited the principal balance of the contract in an account entitled "Adkins Motors—Finance Account." Adkins personally made monthly payments on all of the assigned contracts by use of single check drawn by Adkins on the Roodhouse National Bank. In making payments

Adkins provided the bank with a list of the dollar amounts to be credited to individual contracts. After installments were recorded, the bank notified Adkins of the status of each contract by mail.

In August 1966 Adkins disappeared. Until that time there had been no delinquency on any of the contracts and the bank had little reason to suspect that Adkins was engaged in a fraudulent scheme. As of August 15, 1966, when the defalcations of Adkins were discovered, 161 installment contracts, representing 94 separate transactions, remained outstanding. The aggregate amount remaining to be paid on these contracts was $135,533.69. The difference between that figure and the amount of judgment entered by the district court is $29,521.36, representing finance charges on the contracts.[1] Subsequent to the discovery of his misdeeds, a twelve-count indictment, including four counts for forgery, was obtained against Adkins. No proceedings have been commenced on the indictment, however, since Adkins' whereabouts are still unknown.

## I  *Applicability of Clause B*

Fidelity initially urges that the district court erred in ruling that Roodhouse was entitled to recover the entire amount of its losses under Clause B of the bond. It is conceded by both parties that the defalcations of Adkins are false pretenses within the meaning of Clause B which provides, in applicable part, as follows:

### On Premises

(B) Any loss of Property through robbery, burglary, common-law or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious unexplainable disappearance, damage thereto or destruction thereof, whether effected with or without violence or with or without negligence on the part of any of the Employees.

Fidelity argues, however, that the acts of Adkins constitute forgery within the meaning of section 1(a) of the bond and are expressly excluded from the coverage of Clause B. Section 1(a) reads:

This bond does not cover:

(a) Any loss effected directly or indirectly by means of forgery, except when covered by Insuring Clauses (A), (D), (E), (F) or (G).

Roodhouse agrees section 1(a) precludes coverage for forgery under Clause B, but argues that the misdeeds of Adkins are not forgery within the meaning of the bond.

■■  Our recent decision in Capitol Bank of Chicago v. Fidelity & Casualty Co. of New York, 414 F.2d 986 (7th Cir. 1969), which interpreted an identical provision of a Bankers' Blanket Bond, demonstrates that Roodhouse's position is incorrect. In that case Capitol Bank extended credit to Charles N. May & Co. which was secured by collateral consisting of accounts receivable due May & Co. for the sale of goods to the Alabama Alcoholic Beverage Control Board. May & Co. failed to repay the loan and, when Capitol Bank attempted to recover on the collateral, it discovered that the accounts receivable represented wholly fictitious sales. In holding that the falsification of invoices by May constituted forgery, we relied primarily upon People v. Mau, 377 Ill. 199, 36 N.E.2d 235 (1941), and People v. Kubanek, 370 Ill. 646, 19 N.E.2d 573 (1939), which hold that forgery, under Illinois law, includes any alteration or false writing in an instrument made for the purpose of defrauding a transferee of the instrument. The falsification of retail installment contracts by Adkins for the purpose of obtaining credit falls within this rule. Roodhouse's reliance on People v. Gould, 347 Ill. 298, 179 N.E. 848 (1932), which would limit forgery to falsification of a maker's or endorser's signature, is misplaced. The rule announced

1. Since we hold that Roodhouse's recovery is limited to $25,000, we need not consider Fidelity's contention that unearned finance charges are not within the coverage of the bond.

in the *Gould* case has been expressly rejected by subsequent cases such as People v. Gibbs, 413 Ill. 154, 108 N.E.2d 446 (1952), and People v. Meeks, 55 Ill.App.2d 437, 205 N.E.2d 62 (1965), which follow the broader rule first expressed in the *Kubanek* and *Mau* cases.

## II  *The Applicability of Clause E*

Since the defalcations of Adkins constitute forgery, Roodhouse may recover its losses only under Clause E which provides in pertinent part:

> Any loss through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited, or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, or raised or otherwise altered or lost or stolen or through the Insured's having, in good faith and in the course of business.
>
> * * *

The amount of recovery under Clause E is expressly limited by Rider 627 to the bond which provides in part:

> In consideration of the premium charged for the attached bond as limited by this rider, it is agreed that:
>
> * * * * * *
>
> 2.  The total liability of the Underwriter under Insuring Clause (E) of the attached bond, with respect to any loss or losses sustained at any time but discovered after the date and hour this rider because effective, is limited to the sum of Twenty Five Thousand Dollars ($25,000.00).
>
> 3.  The liability of the Underwriters as limited in each of the paragraphs number 1 and 2 of this rider shall be a part of and not in addition to the amount of the attached bond; subject, nevertheless, to the Non-Reduction of Liability Section of the attached bond.

By obtaining coverage under Rider 627, Roodhouse in effect purchased a separate bond with coverage of $25,000 for forgery of securities. Section 3 of Rider 627 provides, however, that coverage is subject to section 6, the Non-Reduction of Liability section of the bond, which reads in relevant part:

> Non-Reduction of Liability.
>
> Section 6.  Payment of loss under this bond shall not reduce the liability of the Underwriter under this bond for other losses whenever sustained; provided, however, that the total liability of the Underwriter under this bond on account of
>
> * * * * * *
>
> (c) any loss or losses other than those specified in (a) and (b) preceding, caused by acts or omissions of any person (whether one of the Employees or not) or act, or omissions in which such person is concerned or implicated, or (d) any loss or losses with respect to any one casualty or event, is limited to the sum above stated in the opening paragraph of this bond irrespective of the total amount of such loss or losses.

Fidelity argues that since all of the acts of forgery for which Roodhouse seeks recovery were committed by one person, B. L. Adkins, the amount of coverage under the rider ($25,000) is not reinstated for each separate transaction, thus limiting Roodhouse's total recovery to $25,000. Therefore, the central issue before us is whether the amount of the rider is reinstated under section 6 of the bond.

Section 6 provides that payment of loss does not reduce the liability of the underwriter for other losses, that is, reinstatement of the amount of coverage

occurs unless the loss falls within one of four exceptions. Roodhouse, in arguing that coverage is reinstated for each separate transaction under the facts of this case relies upon Humboldt Trust & Savings Bank v. Fidelity & Casualty Co. of New York, 255 Iowa 524, 122 N.W.2d 358 (1963). The facts of that case involved multiple forgeries by a single person and were essentially identical to the case at bar. The court there held that a provision of a Bankers' Blanket Bond identical to subsection (d) of section 6 of the policy did not bar reinstatement for individual forgeries. Fidelity does not dispute this interpretation, but instead relies entirely upon subsection (c) in urging that Roodhouse's recovery should be limited to $25,000. Since the *Humboldt* case did not consider the applicability of a provision similar to subsection (c), we believe the holding of that case is irrelevant in the instant case.

 Fidelity argues that the words "any loss or losses * * * caused by acts or omission of any person" in subsection (c) compel an interpretation which precludes reinstatement under the rider if a number of forgeries are committed by any one person. We agree. Both section 2 of Rider 627 and section 6 of the bond clearly contemplate a single recovery for multiple forgeries in certain situations. Although the language of subsection (c) of section 6 is not absolutely clear, we think that its provisions intend a limitation of recovery in cases involving multiple forgeries committed by a single person. No other purpose for that provision appears and Roodhouse has failed to suggest any interpretation, other than to argue that subsection (c) is completely without effect. We decline to interpret subsection (c) as a nullity especially since the interpretation suggested by Fidelity finds a basis in sensible insurance practices. Thus when an insured bank engages in multiple transactions with any one person, insurers may well wish to encourage banks to carefully scrutinize the reliability and solvency of such a person by limiting coverage under the policy. Our

reading of subsection (c) of section 6 is further supported by the decisions of other courts which have interpreted similar provisions in an identical fashion. Federal Savings and Loan Insurance Corporation v. Aetna Insurance Co., 279 F.Supp. 161 (N.D.Ill.1968); SEC v. Arkansas Loan & Thrift Co., 297 F. Supp. 73 (D.Ark.1969). Accordingly, we hold that the multiple forgeries by Adkins constitute losses "caused by acts * * * of any person" under subsection (c) and that the total liability of Fidelity is "limited to the sum * * * stated in the opening paragraph of this bond [the $25,000 limitation contained in Rider 627]."

The judgment of the district court is reversed with direction to enter a new judgment in favor of Roodhouse in the amount of $25,000.