**CITY OF CEDAR RAPIDS,**
**Iowa, Appellee,**

v.

**NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, Appellant.**

**No. 64780.**

Supreme Court of Iowa.

April 15, 1981.

Rehearing Denied May 7, 1981.

Raymond R. Stefani and Richard A. Stefani, of Silliman, Gray & Stapleton, Cedar Rapids, for appellant.

Lynda Thomsen, Asst. City Atty., for appellee.

Lex Hawkins, Glenn L. Norris, George F. Davison, Jr., of Hawkins & Norris, Des Moines, for amicus curiae Peter Children.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, McGIVERIN, and LARSON, JJ.

HARRIS, Justice.

Plaintiff city brought this suit against its general liability insurer to recover for damages, including punitive damages, it was required to pay in a false arrest suit. The insurance company defended the claim, and argues on appeal, that punitive damage awards were not and could not be covered by the policy. We affirm the trial court's holding for the city.

In a separate suit Larry Wilson obtained a judgment against the City of Cedar Rapids for unlawful arrest, detention, and imprisonment. Because of the similarity between Wilson's name and that of another person, Wilson was falsely arrested and imprisoned by the Cedar Rapids police on a charge of rape. Wilson was held overnight and released the following morning when the mistaken identification was discovered. Jury verdicts, later affirmed by the Iowa Court of Appeals, allowed Wilson $1500 in compensatory damages and $20,000 in punitive damages.

The city was insured by defendant. The policy, covering all city policemen, peace officers, and law enforcement personnel, was called a "general liability-automobile policy."

The defendant company provided counsel and defended Wilson's action during the entire process of the litigation, including the appeal. All this time the city was notified of defendant's position that the policy did not require it to pay exemplary or punitive damages. After the decision of the Iowa Court of Appeals the defendant refused to indemnify the city for the punitive damages awarded Wilson. In addition to denying coverage the defendant also based its refusal on the contention that public policy precluded coverage. The city then brought this suit.

The trial court rejected an estoppel claim which the city alternatively urged as a basis for recovery. The trial court instead found for the city on its underlying position that the policy provided clear coverage for the award. In affirming, we pass the estoppel claim and also rely on the plain coverage provided by the policy.

I. On February 22, 1978, we filed our opinion in *Young v. City of Des Moines*, 262 N.W.2d 612 (Iowa 1978), in which at 621–22 a majority of this court for the first time held that, under certain circumstances, punitive damages are recoverable in tort claims against governmental subdivisions. The policy here was issued in 1975. Wilson's arrest occurred October 5, 1975. Any arguments which the defendant company

might urge as a basis for not allowing punitive damages in suits against the governmental subdivision were considered and rejected by our majority in *Young*. Hence it will not do to argue that punitive damages do not here serve the purpose usually intended. The suggestion that "smart money" exacted from the taxpayers will not deter future conduct by public officers or employees was rejected in *Young*.

A somewhat similar debate rages over whether punitive damages should be recoverable where they would be exacted, not from the wrongdoer, but from the wrongdoer's insurer. *See* Annot., 20 A.L.R.3d 343 (1968). According to one view, public policy should not allow the recovery of punitive damages against an insurer for the wrong of an insured. This view focuses upon the primary function of punitive damages, which is to deter wrongdoing by punishing the wrongdoer. Some cases, typified by *Northwestern National Casualty Company v. McNulty*, 307 F.2d 432 (5 Cir. 1962), invalidate coverage, apparently even if provided for under the terms of an insurance policy.

A second line of cases is typified by *Lazenby v. Universal Underwriters Insurance Co.*, 214 Tenn. 639, 383 S.W.2d 1 (1964). According to the second view, the focus is on the policy itself rather than on the purpose of punitive damages. This second view allows coverage on the same basis as in other insurance claims. Both lines of cases are compared and analyzed in detail in Zuger: *Insurance Coverage of Punitive Damages*, 53 N.D.Law Rev. 239 (1976).

■ It seems to us that the same general policy questions which must be faced in answering this question were already faced by our majority in *Young v. City of Des Moines*. There the city taxpayers (who did not participate in any wrongdoing) ultimately paid the punitive damages. But this did not deter our majority in *Young* from allowing them. It is a far simpler thing to allow damages against an insurer (which has agreed to pay for "all damages") than to direct their payment by city taxpayers. We hold that public policy does not prevent the allowance of punitive damages against an insurer.

■ II. Looking to the policy in this case it is clear that coverage was provided and plainly was not excluded. It provided:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

Group A—false arrest, detention or imprisonment, or malicious prosecution;

The rule is well settled that:

The insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitation or exclusionary clause in clear and explicit terms. Additionally, the company has the burden to prove the applicability of the policy provision.

*Zenti v. Home Ins. Co.*, 262 N.W.2d 588, 590 (Iowa 1978).

The exclusions of the policy here make no mention of punitive damages. They are limited:

(a) to liability assumed by the insured under any contract or agreement;

(b) to personal injury arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured;

(c) to personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the named insured;

(d) to personal injury arising out of any publication or utterance described in Group B, if the first injurious publication or utterance of the same or similar material by or on behalf of the named insured was made prior to the effective date of this insurance;

(e) to personal injury arising out of a publication or utterance described in

Group B concerning any organization or business enterprise, or its products or services, made by or at the direction of any insured with knowledge of the falsity thereof.

 We apply the rule that:

An insurance policy is a contract of adhesion and therefore its provisions will be construed in a light most favorable to the insured.

*State Farm Auto Ins. Co. v. Malcolm,* 259 N.W.2d 833, 836 (Iowa 1977). The question then seems identical to that faced by the Missouri Court of Appeals in *Colson v. Lloyd's of London,* from which we adopt the following:

> "This insurance covers the assured against loss by reason of liability imposed by law upon the assured, by reason of false arrest, assault and battery (as herein defined), false imprisonment or malicious prosecution which may be committed or alleged to have been committed during the currency period of this certificate."

> . . . .

> Clearly the language of the policy before us does not limit recovery to actual or compensatory damages but undertakes to pay for all losses. In our opinion [the company] fully intended to cover its insureds who committed wilful, intentional and malicious acts in their capacity as law enforcement officers. If [the company] had intended otherwise, it could have easily excluded such occurrences in the language of its policy.

435 S.W.2d 42, 43–44, 47 (Mo.App.1968).

Finally we note that the legislature accorded cities and towns unusually broad power to secure liability insurance, doubtless with a view that municipal authorities would be unable to envision all types of risks they might be facing:

> The governing body of any municipality may purchase a policy of liability insurance insuring against all or any part of liability which might be incurred by such municipality or its officers, employees and agents.

§ 613A.7, The Code 1979. This provision was adopted by the legislature long prior to our holding in *Young v. City of Des Moines.* There was no intention by the legislature to limit the authority of municipalities to cover their risks. The legislative purpose was the protection of the public treasury by insurance. It would frustrate that intent if we, after allowing the recovery of punitive damages against municipalities, were to hold there was no authority for municipalities to secure insurance protection.

The trial court was right in determining that the policy here covered the city's liability for punitive damages.

AFFIRMED.