**BANKERS LIFE COMPANY, Appellee,**

v.

**The AETNA CASUALTY & SURETY COMPANY, Appellant.**

No. 84–280.

Supreme Court of Iowa.

April 17, 1985.

Glenn L. Smith and Hugh J. Cain of Duncan, Jones, Riley & Finley, Des Moines, for appellant.

Kent M. Forney, David J.W. Proctor and William F. Fanter of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellee.

WOLLE, Justice.

This case demonstrates how the language and structure of an insurance contract can obscure its meaning when its basic fabric consists of standardized printed forms. Bankers Life Company (Bankers Life) purchased from defendant Aetna Casualty & Surety Company (Aetna) a blanket surety bond which provided coverage for securities losses of the type Bankers Life thereafter sustained. While the bond was in force, Bankers Life lost in excess of $5,000,000 on five separate promissory notes which were part of a massive securities fraud perpetrated by OPM Leasing Services, Inc. (OPM). Bankers Life brought this action to recover $5,000,000, contending that the bond obligated Aetna to pay it $1,000,000 on each of the five notes. Aetna countered that a rider attached to the bond limited its total liability to $1,000,000. The trial court decided that

Aetna was required to indemnify Bankers Life for $5,000,000 of its securities losses. The court concluded that its construction of the bond language was entirely consistent with *Humboldt Trust & Savings Bank v. Fidelity & Casualty Co.,* 255 Iowa 524, 122 N.W.2d 358 (1963), a case in which our court construed a blanket bond strikingly similar to that issued by Aetna. We affirm.

The trial court decided the case as a jury-waived law action tried on stipulated facts. In February of 1980 Bankers Life purchased the bond from Aetna to cover certain business losses including those embraced within the following language pertinent to securities losses. The opening paragraph of the bond provides:

> In consideration of an agreed premium, THE AETNA CASUALTY AND SURETY COMPANY, a corporation of the State of Connecticut, with its Home Office in the City of Hartford, hereinafter referred to as Underwriter, hereby undertakes and agrees to *indemnify and hold harmless BANKERS LIFE COMPANY* (See name of Insured Rider) hereinafter referred to as Insured, *to an amount not exceeding FIVE MILLION AND NO/100 DOLLARS ($5,000,000). From and against any losses* sustained by the Insured subsequent to noon of the date hereof and while this bond is in force....

(Emphasis added). The coverage clause, clause (E), states in part:

> SECURITIES. (E) Any loss through the Insured's having, in good faith and in the course of business ... purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents, or other written instruments which proved to have been counterfeited or forged as to the signature ... or raised or otherwise altered....

Attached to the bond is Rider SR 5374b upon which Aetna heavily relies for its contention that its maximum total liability here is $1,000,000 rather than $5,000,000:

> 1. The total liability of the Underwriter under Insuring Clause (E) of the attached bond ... is limited to the sum of ONE MILLION AND NO/100 DOLLARS ($1,000,000), it being understood, however, that such liability shall be a part of and not in addition to the amount of the attached bond; *subject, nevertheless, to the* Reinstatement or *Non-Reduction of Liability Section,* as the case may be, *of the attached bond.*

(Emphasis added). The non-reduction of liability clause of the bond referred to in the Rider provides:

> NON–REDUCTION OF LIABILITY. Section 8. Payment of loss under this bond shall not reduce the liability of the Underwriter under this bond for other losses whenever sustained. *PROVIDED, however, that the total liability of the Underwriter under this bond on account of* (a) any loss or losses caused by any one act of burglary, robbery or hold-up, or attempt thereat, in which no Employee, General Agent of the Insured, Soliciting Agent or Servicing Agent is concerned or implicated, *or* (b) any loss or losses with respect to any intentional or negligent act or omission on the part of any person (whether one of the Employees, General Agents of the Insured, Soliciting Agents or Servicing Agents or not) resulting in damage to or destruction or misplacement of Property, *or (c) any loss or losses other than those specified in (a) and (b) preceding, caused by acts or omissions of any person (whether one of the Employees, General Agents of the Insured Soliciting Agents or Servicing Agents or not) or acts or omissions in which such person is concerned or implicated, or* (d) any loss or losses with respect to any one casualty or event, *is limited to the sum above stated in the opening paragraph of this bond irrespective of the total amount of such loss or losses.*

(Emphasis added).

The parties agree that each of the forged notes caused a loss of substantially more

than $1,000,000 and that each of the losses was "either caused or was concerned with the acts or omissions of the same person," OPM.

The trial court accurately summarized the parties' differing constructions of that bond language and its own reasons for accepting the Bankers Life position in the following excerpts from its well-reasoned opinion:

> Bankers Life claims Aetna's liability is limited by the Rider to $1 million for each of the five losses and that Aetna is liable for an additional $4 million under the Bond. Banker's Life contends the Rider is subject to the terms of the Non-Reduction of Liability Clause which refers to the $5 million coverage limitation in the opening paragraph of the Bond. Thus, Banker's Life contends it may recover $1 million for each of the five related losses up to a total of $5 million. Had there been a sixth loss related to the O.P.M. frauds, Banker's Life concedes there would be no further coverage under the Bond. Aetna simply takes the position its liability under the Bond is limited to $1 million pursuant to the Rider. Aetna claims the language of the Rider substitutes the $1 million coverage limitation for the $5 million limitation of the opening paragraph of the Bond. Therefore, Aetna contends it has no further liability under the Bond.
>
> . . . .
>
> The Court concludes the Non-Reduction of Liability Clause language, "is limited to the sum above stated in the opening paragraph of this bond", modifies each subparagraph of that section including (A), (B), (C) and (D). The Proviso of the Non-Reduction of Liability Section contains four disjunctive subparagraphs each of which is subject to the final clause reinstating the sum stated in the opening paragraph. Referring to the opening paragraph of the bond, the Court concludes Bankers Life coverage for the O.P.M. frauds is limited "to an amount not exceeding FIVE MILLION AND NO/100 DOLLARS ($5,000,000)." Reading the Rider, Non-Reduction of Lia-

bility Clause and Opening Paragraph of the Bond together, the Bond provides coverage in this situation in an amount of $1 million for each related loss up to a total of $5 million.

We agree with the trial court's construction of the bond. A reasonable person reading the bond must finally decide what meaning to give to the non-reduction of liability paragraph which is specifically referred to in the rider on which Aetna's construction depends. The first sentence of the non-reduction paragraph replenishes the amount of the bond available after each loss is paid. The final sentence of the non-reduction paragraph limits the total amount of replenishment to "the sum above stated in the opening paragraph of the bond," $5,000,000 as Bankers Life contends and not $1,000,000 as Aetna contends.

Aetna argues that this construction of the bond improperly divorces the rider limitation of $1,000,000 for securities losses from the general coverage clause limitation of $5,000,000. Aetna contends that when the non-reduction of liability clause refers back to the sum stated in the opening paragraph of the bond, it refers not to the $5,000,000 sum there stated but to the $1,000,000 sum stated in the rider. Bankers Life sensibly responds that the two limitations are not one, but rather that they represent different limitations whose application to the facts of this case must be ascertained from the wording of the bond itself.

■■■ We recognize that riders, like endorsements, are entitled to receive full weight as integral parts of the insurance agreement; they are "as much a part of the policy as any provision therein unmodified by an endorsement or rider." *Hawkeye Clay Works v. Globe & Rutgers Fire Insurance Co.*, 202 Iowa 1270, 1277, 211 N.W. 860, 864 (1927). But riders, like all other provisions of the bond, are subject to our cardinal rule of construction that what the entire instrument means in a given context is to be determined by what the

contract itself says. Iowa R.App.P. 14(f)(14). The rider is entitled to the weight it is due but not more weight than its wording deserves.

Well-established principles of insurance law govern our construction of the wording of this bond. A bond, like an insurance policy, is a contract of adhesion whose "provisions will be construed in a light most favorable to the insured." *City of Cedar Rapids v. Northwestern National Insurance Co.*, 304 N.W.2d 228, 231 (Iowa 1981); *accord Connie's Construction Co. v. Fireman's Fund Insurance Co.*, 227 N.W.2d 207, 210 (Iowa 1975). As a corollary to that rule, we narrowly and strictly construe language in clauses through which an insurer attempts to condition or make exception to broad coverage otherwise provided in an insuring agreement. *See State Farm Automobile Insurance Co. v. Malcolm*, 259 N.W.2d 833, 835 (Iowa 1977). That rule was expressed as follows in *Zenti v. Home Insurance Co.*, 262 N.W.2d 588, 590 (Iowa 1978), *quoted in City of Cedar Rapids v. Northwestern National Insurance Co.*, 304 N.W.2d at 230:

> The insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitation or exclusionary clause in clear and explicit terms.

Here, Aetna held out $5,000,000 in coverage in the opening paragraph and did not perform its duty to define clearly and explicitly any intent it had (if that was the purpose of the rider) to take back $4,000,000 of that coverage under the circumstances of this case.

Neither expressly nor by fair implication does the rider erase the last sentence of the non-reduction paragraph or the $5,000,000 limitation in the bond's first paragraph to which that sentence expressly refers. Aetna's attempt to erase those parts of the bond by implication strains the entire fabric of the bond much more than the trial court's construction which gives controlling effect to their express wording under the facts of this case.

Before this bond was issued Bankers Life wrote to Aetna's agent expressing its understanding that Aetna would "issue a new bond to avoid a lot of endorsements." Aetna responded with a bond pieced together from standardized printed forms, including seven separate riders. Now Aetna asks us to derive from the wording it selected a meaning which we find was not clearly expressed. Aetna could have added to the rider such words as, "With respect to losses under Insuring Clause (E) the limitation in this rider replaces the sum stated in the opening paragraph of this bond." Aetna could also, or in the alternative, have given the rider the eraser effect it may have wanted by providing in the last sentence of the non-reduction of liability clause that liability would be limited to the sum above stated in the opening paragraph of this bond "or any lesser sum provided in any rider limiting coverage," or words to that effect. The bond as issued, however, does not express or fairly imply such a modification of the literal meaning of the language of this bond.

The trial court also found Bankers Life's position entirely consistent with our decision in *Humboldt Trust & Savings Bank v. Fidelity & Casualty Co.*, 255 Iowa 524, 122 N.W.2d 358 (1963). We agree. The pertinent clauses of the bank bond construed in *Humboldt Trust*, even the wording and punctuation of those clauses, were for all practical purposes indistinguishable from those here. The opening paragraph of the bond limited coverage of all losses to $130,000; a similar rider limited forgery coverage to $2500; and a similar non-reduction of liability paragraph allowed replenishment of the coverage after payment of losses, but "limited to the sum above stated in the opening paragraph of this bond." Although our *Humboldt Trust* opinion did not quote or refer to all pertinent clauses in that bond, Aetna does not challenge the trial court's specific finding that the bond language there was "identical to the Aetna bond in this case" except for the dollar limitation amounts specified in the opening paragraph of the bond and its rider.

In *Humboldt Trust* our court held that the clause in the rider subjecting it to the non-reduction of liability paragraph renewed full liability on the bond after each loss, effectively generating a potential liability for forgery in the amount of $130,000 even though the rider's limit was only $2500. *Id.* at 526–27, 122 N.W.2d at 359–60. Although our *Humboldt Trust* opinion did not specifically mention the subparagraph (c) part of the non-reduction clause which refers to losses "caused by acts or omissions of any person ... or acts or omissions in which such person is concerned or implicated ...," it did refer to the subparagraph (d) part of the non-reduction clause which provides for "any loss or losses with respect to any one casualty or event." *Humboldt Trust* held that the reference back to "the sum above stated in the opening paragraph of this bond" overrides those limiting subparagraphs in the non-reduction of liability clause. Neither the bond language nor the facts of *Humboldt Trust* are distinguishable from those here. The trial court correctly found it controlling.

Like the trial court, we are mindful that *Humboldt* has been criticized by several federal courts which have expressed their preference for a contrary construction of the bond. *See Roodhouse National Bank v. Fidelity and Deposit Co.*, 426 F.2d 1347, 1351 (7th Cir.1970); *Securities and Exchange Commission v. Arkansas Loan and Thrift Corp.*, 297 F.Supp. 73, 81 (W.D. Ark.1969), *aff'd* 427 F.2d 1171 (8th Cir. 1970); *Federal Savings and Loan Insurance Corp. v. Aetna Insurance Co.*, 279 F.Supp. 161, 163–63 (N.D.Ill.1968); *see also Benton State Bank v. Hartford Accident and Indemnity Co.*, 452 F.2d 5, 7–8 (8th Cir.1971) (adopting contrary construction without mentioning *Humboldt Trust*); *Maryland Casualty Co. v. Clements*, 15 Ariz.App. 216, 222–24, 487 P.2d 437, 443–45 (1971) (same). The district court questioned the reasoning of those decisions and concluded that the *Humboldt Trust* construction of this bond produced a reasonable result. We agree. None of those decisions from other jurisdictions satisfactorily explains how the rider expressly or by fair implication nullifies the last paragraph of the non-reduction clause or the general coverage limitation in the opening paragraph to which it refers.

Aetna had full and fair opportunity to draft the language of this bond in such a way as to avoid our *Humboldt Trust* decision and limit unequivocally the amount of any securities loss involving acts or omissions of one person or enterprise. When Aetna selected a rider and put together a bond identical to that in *Humboldt Trust*, it should reasonably have expected Iowa courts to follow the foursquare *Humboldt Trust* opinion as precedent in construing the bond's meaning.

We find the trial court correctly construed the terms of the blanket surety bond and properly entered judgment for Bankers Life for the full amount of coverage provided by the bond on the facts of this case, $4,000,000 in addition to the $1,000,000 Aetna voluntarily paid.

AFFIRMED.

All Justices concur except McCORMICK, UHLENHOPP and LARSON, JJ., who dissent.

McCORMICK, Justice (dissenting).

The $4,000,000 question in this appeal concerns the effect of a coverage rider on a surety bond. Plaintiff Bankers Life Company purchased a blanket surety bond from defendant Aetna Life and Casualty Company in 1980 to obtain coverage of certain losses including losses due to investments in forged securities. In 1981 Bankers Life lost approximately $17,000,000 through investments in five forged notes. Bankers Life asserts it is entitled to recover $5,000,000 of its losses on the bond, but Aetna contends a rider limits the coverage to $1,000,000. In this action on the bond, the trial court held that Bankers Life was entitled to recover the amount claimed. I would reverse.

Bankers Life bases its claim on the theory that even for securities losses the rider

did not change the coverage stated in the opening paragraph of the bond for purposes of the PROVIDED clause in the non-reduction of liability section. Its argument proceeds as follows: The rider limits coverage for securities losses under clause (E) to $1,000,000 but is expressly subject to the non-reduction of liability section. Because multiple losses are involved here, the non-reduction of liability section comes into play. If the losses were not caused by the act or omission of one person, they would each be payable up to the clause (E) coverage limit of $1,000,000. If the losses were caused by different persons, therefore, Bankers Life could recover $5,000,000 altogether. Because the losses were caused by the act or omission of one person, however, the exception to non-reduction of liability in subsection (c) applies. When that exception applies, recovery "is limited to the sum above stated in the opening paragraph of [the] bond...." Bankers Life asserts that the stated amount is $5,000,000. Thus the amount stated in the opening paragraph is treated as a ceiling on accumulated losses from the acts or omission of one person. In this case the result is the same as it would be if the losses were not covered by the subsection (c) exception. In both situations, Bankers Life could recover $5,000,000. If the same person had caused a sixth loss, however, Bankers Life says it would be limited to the $5,000,000 recovery because subsection (c) would limit its cumulative recovery to $5,000,000.

Aetna's response to this argument is that the rider reduced the coverage for clause (E) losses to $1,000,000. The rider had the effect, according to Aetna, of modifying the coverage stated in the opening paragraph of the bond as if it had originally been written as part of that provision. Thus Aetna contends that when the non-reduction of liability section refers back to the sum stated in the opening paragraph of the bond, it refers to the sum originally stated as modified by the rider. Under Aetna's theory the non-reduction of liability section allows multiple recovery up to $1,000,000 for each clause (E) loss unless one of the exceptions in the PROVIDED

clause applies. Because the parties agree subsection (c) applies here, the loss is treated as a single loss and the limitation applies. That limitation, in the opening paragraph as modified by the rider, is $1,000,000.

The fundamental problem with the Bankers Life argument is that it attributes a meaning to the language of the bond that shortcircuits two basic principles of construction. One is the principle that a policy rider becomes a part of the insurance policy as if it were incorporated in the language of the policy that it affects. *See Motor Vehicle Casualty Co. v. LeMars Mutual Insurance Co.*, 254 Iowa 68, 72, 116 N.W.2d 434, 436 (1962). The other principle is that in ascertaining the meaning of the bond the instrument should be read as a whole. *See Stover v. State Farm Mutual Insurance Co.*, 189 N.W.2d 588, 591 (Iowa 1971). An ambiguity can be said to exist concerning the meaning of an insurance contract only if uncertainty exists *after* application of the relevant canons of construction. *See Fraternal Order of Eagles v. Illinois Casualty Company*, 364 N.W.2d 218, 221 (Iowa 1985). Only then can it be determined if the policy is fairly susceptible to two meanings. *See Farm Bureau Mutual Insurance Co. v. Sandbulte*, 302 N.W.2d 104, 108 (Iowa 1981). The question in this case thus is reduced to whether, after application of the canons of construction, the bond is reasonably susceptible to the meaning urged by Bankers Life.

The linchpin of the Bankers Life argument is the language in the non-reduction of liability section of the bond limiting recovery for multiple losses in four situations "to the sum above stated in the opening paragraph of this bond...." In arguing that this language affords $5,000,000 cumulative coverage for multiple losses caused by the act of one person, Bankers Life makes an end-run around the canons of construction that a policy rider rewrites the language that it affects and that the policy is to be read and construed as a

whole. When these canons are applied, the argument collapses.

Under the first canon, the amount stated in the opening paragraph of the bond was modified by the rider in this case for clause (E) losses with the same legal effect as if the rider were included in that paragraph. *See* 1 G. Couch, *Cyclopedia of Insurance Law* § 4:24 at 378 (2d ed. 1984) ("a rider or slip attached to a policy or certificate of insurance is, prima facie at least, a part of the contract to the same extent, and with like effect, as if actually embodied therein"). It is a contradiction of the principle, totally without support in the authorities, to assert that a policy rider that modifies coverage is to be narrowly and strictly construed. The provisions of the rider erase and supersede inconsistent provisions of the bond. 13A J. Appleman, *Insurance Law and Practice* § 7539 at 171–72 (rev. ed. 1976). The construction urged by Bankers Life is therefore based on a legally untenable premise that the amount stated in the opening paragraph of the bond remained unaffected by the rider.

Moreover, in giving effect to the canon that a policy should be construed as a whole, a policy should not be given a construction that has the effect of defeating the purpose of one of its provisions. Here the parties agree that the non-reduction of liability section allows serial recovery up to $1,000,000 for each loss for multiple losses unless an exception in the PROVIDED clause applies. The exceptions are a limitation on recovery otherwise available for multiple losses. Thus it is clear that the purpose of subsection (c), which Bankers Life admits applies here, is to provide less protection when losses are caused by one person than when losses are caused by the acts or omissions of persons acting independently.

Obviously this limitation is based on the idea that an insured ordinarily should be able to discover wrongdoing of one person sooner than it might discover the wrongdoing of several persons acting separately. This limiting purpose of the PROVIDED clause is confirmed by sections 9 and 10 of the bond. Section 9 provides that losses under the PROVIDED clause in section 8 "shall not be cumulative in amounts from year to year or from period to period." Section 10 expressly limits losses subject to subsection (c) of the PROVIDED clause that are also covered by a prior bond to the greater of the coverage of one of the two bonds.

Only the construction advocated by Aetna gives consistent effect to the limiting purpose of the PROVIDED clause. The Bankers Life construction would give an insured up to $5,000,000 in coverage for clause (E) multiple losses regardless of whether the losses were caused by one person or more than one person. In addition it would afford greater protection when large multiple losses are caused by one person than when they are caused by two or more. For example, assume two losses of $5,000,000, each caused by the act of one person. Under the Bankers Life view, the insured would recover $5,000,000 altogether on the bond. Under Aetna's view, the total recovery would be $1,000,000. Assume two losses of $5,000,000, caused by the act of separate persons. Under both views, total recovery would be limited by the rider to $1,000,000 for each loss for a total of $2,000,000.

The example can be carried further. Assume three $5,000,000 forgeries by one person. Bankers Life would allow recovery of $5,000,000, the purported coverage limit. If the three forgeries were acts of separate persons, however, the Bankers Life theory would allow total recovery of only $3,000,000, because no exception in the PROVIDED clause would apply. Aetna would allow total recovery of $1,000,000 in the case of three $5,000,000 forgeries by one person and $3,000,000 based on three separate recoveries of $1,000,000 in the case of three $5,000,000 forgeries by separate persons. Contrary to the clear purpose of the non-reduction of liability section, Bankers Life thus claims more protection against multiple losses caused by one person than against multiple losses caused by persons acting independently.

After the relevant canons of construction are applied to the bond, the bond is not reasonably susceptible to the meaning urged by Bankers Life. Rather the construction advocated by Bankers Life is strained and unreasonable. I believe the trial court erred in adopting it.

In entering judgment for Bankers Life the trial court relied on *Humboldt Trust & Savings Bank v. Fidelity & Casualty Company of New York,* 255 Iowa 524, 122 N.W.2d 358 (1963). The facts and bond in the *Humboldt Trust* case were like those here, and that case would be controlling unless we overrule it. The case has never been followed, has been criticized elsewhere, and is unsound.

In *Humboldt Trust,* the opening paragraph of the bond limited general coverage to $130,000, a rider limited forgery coverage to $2,500, and the non-reduction of liability section contained language identical to that involved here. The bank discovered nine forgeries by one person, all but one for more than $2,500. The bank contended it was covered to $2,500 for each forgery, and the insurer contended total coverage was limited by the rider and non-reduction of liability section to $2,500. In holding for the bank, this court characterized the reference to the non-reduction of liability section to the amount stated in the opening paragraph of the bond as a "reservation" of full coverage: "This clearly renews full liability on the bond after each loss. It automatically immediately becomes a bond of $130,000." *Id.* at 526, 122 N.W.2d at 359. The court thus held liability was identical "whether nine separate forgeries were committed by one person or whether nine forgeries were committed by nine people." *Id.* at 527, 122 N.W.2d at 360. This construction differs from that advocated by Bankers Life because the *Humboldt Trust* holding did not recognize the $130,000 originally stated in the opening paragraph as a ceiling on cumulative recovery for multiple forgery losses caused by one person. Instead it treats the coverage as fully replenished for each loss. This construction turns the purpose of the non-reduction of liability section on its head

and totally ignores the distinction between multiple losses caused by one person and those caused by more than one person. Thus it nullifies the significance of subsection (c).

Every other court that has considered the provisions of a non-reduction of liability section like that in this bond has either expressly or impliedly rejected the *Humboldt Trust* holding. *See Howard, Weil, Labouisse, Friedrichs, Inc., v. Insurance Co. of North America,* 557 F.2d 1055 (5th Cir.1977); *Benton State Bank v. Hartford Accident and Indemnity Co.,* 452 F.2d 5 (8th Cir.1971); *Roodhouse National Bank v. Fidelity and Deposit Company of Maryland,* 426 F.2d 1347 (7th Cir.1970); *Securities and Exchange Commission v. Arkansas Loan and Thrift Corp.,* 297 F.Supp. 73 (W.D.Ark.1969), *aff'd,* 427 F.2d 1171 (8th Cir.1970); *Federal Savings and Loan Insurance Corp. v. Aetna Insurance Co.,* 279 F.Supp. 161 (N.D.Ill.1968); *Maryland Casualty Company v. Clements,* 15 Ariz.App. 216, 487 P.2d 437 (1971). All of these courts have adopted an interpretation of the non-reduction of liability section consistent with that urged by Aetna in this case. I believe the reasoning of those courts is correct and the reasoning of this court in the *Humboldt Trust* case was not. As with other precedent that has been rejected on reconsideration, we should overrule *Humboldt Trust. See Kersten Co., Inc. v. Department of Social Services,* 207 N.W.2d 117, 121 (Iowa 1973).

Because I believe the bond is not fairly susceptible to the meaning ascribed by the trial court, I would reverse the judgment.

UHLENHOPP and LARSON, JJ., join this dissent.