TOWN OF PETERBOROUGH

v.

The HARTFORD FIRE INSURANCE
COMPANY and Its Affiliates; ITT
Hartford Insurance Group.

Civ. No. 92–50–SD.

United States District Court,
D. New Hampshire.

June 9, 1993.

David W. Hess, Manchester, NH, Richard R. Fernald, Peterborough, NH, for plaintiff.

Stephen J. Abarbanel, Boston, MA, Kevin M. Fitzgerald, Manchester, NH, for both defendants.

## ORDER

DEVINE, Senior District Judge.

This is a petition for declaratory judgment to determine the coverage of certain insurance policies. The petition was filed by plaintiff Town of Peterborough (New Hampshire) on January 17, 1992, and was dismissed by the court for lack of subject matter jurisdiction on March 11, 1993.[1] Subsequently, the court reopened the judgment to permit plaintiff to amend its petition to bring its action under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (Supp.1993). The court's jurisdiction is based on a diversity of citizenship. 28 U.S.C. § 1332(a)(1) and (c)(1) (Supp.1993).

Presently before the court are (1) plaintiff's motion for summary judgment, (2) defendants' cross-motion for summary judgment, (3) defendants' motion to strike the affidavit of John F. Dudziak, and (4) defendants' supplemental motion for partial summary judgment pursuant to this court's order of April 29, 1993.

### 1. Background

#### a. The Depositing of Hazardous Substances at the Site of the Former Town Dump

From approximately 1948 to 1970, certain property located in Peterborough, New Hampshire, was made available to town residents as a dump. This property is now owned by Eastern Mountain Sports, Inc. (EMS). In 1986, hazardous substances were detected in the soils and groundwater on the EMS property and on an adjacent property. On May 24, 1990, EMS filed an action with this court against New Hampshire Ball Bearings, Inc. (NHBB), seeking, inter alia, to recover the cost of cleaning up the contamination at the EMS site. In its complaint, EMS alleged that NHBB used the EMS site "as a disposal ground for hazardous substances in the form of liquid industrial wastes over a twenty-two-year period from 1948 to 1970." Complaint in *Eastern Mountain Sports v. New Hampshire Ball Bearings, Inc.*, Civil Action No. 90–231–L (D.N.H.), filed May 24, 1990, at 1. On June 5, 1991, NHBB brought a third-party action against the Town seeking indemnification or contribution for any amounts adjudged against it on the EMS claims, and also seeking damages for negligence.

Plaintiff has presented deposition testimony of three witnesses, Charles W. Cook, Jr., Donald H. Parkhurst, and Alden S. Brunnell, who claim to have either observed or participated in the dumping of hazardous substances at the site of the former town dump. Mr. Cook testified that he made frequent trips to this site during the period from 1950 to 1970, during which time he alleges his now deceased brother-in-law, George Starkweather, "ran the dump". Deposition Transcript of Charles W. Cook, Jr., at 16–19. Mr. Cook recalled, inter alia, that during the period "from 1953 to about 1955 or '56", he

1. Said dismissal is discussed *infra*.

observed William Newhall, now deceased, but at the time an employee of NHBB, emptying a 275–gallon drum tank containing "burnable stuff" into the ground at the site of the former town dump. *Id.* at 19–21.

Mr. Parkhurst testified that he had been employed by NHBB for a part of each year during the period from 1964 through 1969. Deposition Transcript of Donald H. Parkhurst at 11–18. Mr. Parkhurst testified that during the summers of 1964 through 1967, as an employee in the maintenance area, he assisted in the disposal of certain materials at the town dump. *Id.* at 11–12. According to Mr. Parkhurst, during this time NHBB

> had a sink in the loading dock area that was connected to a storage trailer outside, any of your waste oils, solvents, etc. were poured into the sink, which went into the tank, when the tank was full it was towed down to the dump and the valve was opened and just let it go down over the banking.

*Id.* at 12. Mr. Parkhurst testified that he participated in the disposal of "perchloroethylene or 1, 1, 1 trichloroethylene", and "the waste product of the oil and solvents". *Id.* at 17–18. Mr. Parkhurst further testified that NHBB was using "trichloroethylene and perchloroethylene" "at least from 1964 through 1968". *Id.* at 18–19.

Mr. Brunnell testified that he had been employed by NHBB from "about 1968" to 1980, Deposition Transcript of Alden S. Brunnell at 4, and that his tasks at NHBB included working on a machine involved in the ball bearing production process and general maintenance work, *id.* at 4–5, including machine cleaning, *id.* at 7. Mr. Brunnell further testified that during the period from 1968 to 1970, in the course of his employment at NHBB, he observed and participated in the periodic emptying of barrels containing oil, metal shavings, and steel chips at the site of the former town dump. *Id.* at 10, 19–22.

Plaintiff does not allege that hazardous substances were deposited at the site of the former town dump after 1970.

Plaintiff's expert affiant Peter J. McGlew [2] states that he has reviewed (1) "The October 1991 ENSR *Consulting and Engineering, Site Investigation and the Evaluation of Remedial Alternatives EMS Parcel B Site Peterborough, New Hampshire* "; (2) "[t]he EMTEK, Inc. Remedial Investigation and attachments dated April, 1989, for the South Municipal Well Superfund Site"; (3) "[v]arious technical documents and texts regarding contaminant transport and behavior in the subsurface environment"; and (4) "[t]ranscripts and documents provided by Nixon, Hall and Hess, P.A. regarding the past waste disposal at the EMS Parcel B site." McGlew Affidavit at ¶ 6. Mr. McGlew states

> A. The ENSR Consulting and Engineering data and site information collected in the course of the EMS Parcel B Site studies, are sufficient to make a scientifically reasonable conclusion as to the time necessary for VOC contaminants to contaminate Site soil and ground water after disposal. My conclusions are based on the following ENSR data and information including the water ground depths, soil permeabilities, observed volatile organic compound (VOCs) concentrations in Site soil and ground water and the reported presence of dense non-aqueous phase liquids (DNAPLs) by ENSR.
>
> B. The bulk liquid wastes reported to be disposed at the EMS Parcel B Site by local industries would immediately contaminate the Site soils and probably contaminate the underlying shallow ground water within a month from initial deposit.

*Id.* at ¶¶ 7A–7B.

### b. The Alleged Hartford Policies

According to plaintiff's counsel Richard R. Fernald, at an unspecified point in time either on or prior to July 25, 1991,

---

2. In his affidavit, Mr. McGlew states

> I have a Bachelor of Science Degree in Natural Resources, and a Masters Degree in Geology. I am a Licensed Professional Geologist and Certified Ground Water Professional specializing in hydrogeology.

Affidavit of Peter J. McGlew (Attached to Plaintiff's Objection to Defendants' Cross–Motion for Summary Judgment) at ¶ 2.

[a] review of records stored at the E.A. Bishop Co., Inc. [plaintiff's then insurance agent] by its employees revealed ledger cards indicating that the Hartford Fire Insurance Company apparently provided comprehensive general liability insurance coverage to the Town of Peterborough under Policy Number 08SMP905678 for the period February 1, 1965 through February 1, 1968 and under Policy Number 08SMP100151 for the period February 1, 1968 through February 1, 1971. No actual policies were found.

Affidavit of Richard R. Fernald at ¶ 4; *see also id.* at ¶ 5. Further, in Plaintiff's Opposition Memo at page 5, plaintiff alleges that

[d]uring discovery, the Town produced the two insurance policies that had been found and a cardboard box of documents evidencing the existence of various other insurance policies issued to the Town by Hartford for the period March, 1964 through December, 1978.

Plaintiff has attached significant portions of two Hartford policies to its Motion For Summary Judgment: (1) Policy No. 04SMP600858, Plaintiff Town Of Peterborough's Motion For Summary Judgment ("Plaintiff's Motion"), Attachment 2; and (2) Policy No. 08SMP100151, Plaintiff's Motion, Attachment 1.[3] On the first page of the material identified as part of Policy No. 04SMP600858, the previous policy number of Policy No. 04SMP600858 is identified as "08 SMP 100151". Plaintiff's Motion, Attachment 2, at 1. On the first page of the material identified as part of Policy No. 08SMP100151, the previous policy number of Policy No. 08SMP100151 is identified as "08 SMP 905678". Plaintiff's Motion, Attachment 1, at 1. However, neither party has submitted Policy No. 08SMP905678. Plaintiff has presented no other Hartford documents to support its claim of coverage during

the period from March 1964 through December 1978.

In their answer to the original petition, defendants admitted that "the Town of Peterborough is the insured under policy 04SMP600858." Answer Of [Hartford] at ¶ 2.

The attached portions of Policy No. 08SMP100151 and Policy No. 04SMP600858 submitted by plaintiff each contain a provision stating that

[t]he Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, *caused by an occurrence* . . .

Plaintiff's Motion, Attachment 1, at 3 (Form MLB–200 appearing among material identified as part of Policy No. 08SMP100151) *and* Plaintiff's Motion, Attachment 2, at 17 (Form MLB–200, stamped "CFC SAMPLE" and appearing among material identified as part of Policy No. 04SMP600858) (emphasis added). Form 4097 defines "occurrence" as

an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

[Hartford]'s Cross–Motion For Summary Judgment, Or, In The Alternative, Opposition To The Town Of Peterborough's Motion For Summary Judgment ("Defendants' Cross–Motion"), Exhibit D at 4; and further defines "property damage" as "injury to or destruction of tangible property," *id.*

Plaintiff's affiant John F. Dudziak states that, "[b]ased upon [his] review of the documentation provided [him] and the contents of those documents," it is his opinion that Hartford issued the following "liability and umbrella insurance policies" to the Town of

---

3. Defendants note that the portions of Policy No. 08SMP100151 and Policy No. 04SMP600858 submitted by plaintiff
 are missing Form 4097, which contains the definitions of certain terms used in the policies. However Form 4097 was produced by the Town in response to Hartford's discovery requests.

[Hartford]'s Memorandum Of Law In Support of Its Cross–Motion For Summary Judgment, Or, In The Alternative, Opposition To The Town Of Peterborough's Motion For Summary Judgment ("Defendants' Cross–Motion Memo") at 4 n. 3.

Peterborough for the following time periods:[4]

### POLICY NUMBER/EFFECTIVE DATE/EXPIRATION DATE

| | | |
|---|---|---|
| 04HU650378 | 1/16/74 | 1/16/75 |
| 04SMP603407 | 2/1/74 | 2/1/77 |
| 04HU650077 | 1/16/75 | 1/16/76 |
| 04SMP604453 | 12/1/75 | 12/1/76 |
| 04HU650850 | 1/1/76 | 12/1/76 |
| 04HU650912 | 12/1/76 | 12/1/77 |
| 04SMP604453 [5] | 12/1/76 | 12/1/78 |
| 04HU651002 | 12/1/77 | 12/1/78. |

("Table 1") Supplemental Affidavit of John F. Dudziak at ¶ 12 (citing Affidavit of John F. Dudziak, Attachment at 2). In his original affidavit, Mr. Dudziak states,

> Based upon my examination of [the policies listed in Table 1], my knowledge of insurance coverages generally available during the period in question, and the exclusions generally contained in such liability policies during the period in question, it is my opinion based upon the facts known to me that [the policies listed in Table 1] almost certainly provide liability coverage for the claims made against the Town of Peterborough in the case of *Eastern Mountain Sports v. New Hampshire Ball Bearings, Inc. v. Town of Peterborough, et al.* . . . .

Affidavit of John F. Dudziak at ¶ 6; *see generally id.* at ¶¶ 2–5.

In addition, Mr. Dudziak states,

> I have personal knowledge from dealing with SMP [ (Special Multi–Peril] ) policies similar to, if not identical with, policies No. 08SMP100151 and 04SMP600858 that such SMP policies had no express pollution exclusion. It was the practice, custom and usage in the insurance trade and profession prior to the early 1970s that damages resulting from environmental contamination and pollution were covered under the 1966 version of the comprehensive general liability coverage forms which were utilized in these SMP policies.

Supplemental Affidavit of John F. Dudziak at ¶ 7. Based upon the foregoing analysis and his knowledge, it is Mr. Dudziak's opinion that Hartford issued the following "liability insurance policies" to the Town of Peterborough for the following time periods:[6]

### POLICY NUMBER/EFFECTIVE DATE/EXPIRATION DATE

| | | |
|---|---|---|
| 08SMP905678 | 3/1/65 | 3/1/68 |
| 08SMP100151 [7] | 3/1/68 | 3/1/71 |
| 04SMP600858 | 3/1/71 | 3/1/72.[8] |

4. The following table is derived from data which appears at Affidavit Of John F. Dudziak, Attachment at 2.

5. The court notes that Mr. Dudziak has offered two different sets of coverage dates for Hartford Policy No. 04SMP604453.

6. This table is derived from the aforementioned data which appears at Affidavit Of John F. Dudziak, Attachment at 2.

7. Contrary to Mr. Dudziak's opinion, the policies themselves show the period of coverage under Policy No. 08SMP100151 as beginning on February 1, 1968, and expiring on February 1, 1971. Plaintiff's Motion, Attachment 1, at 1; Defendants' Cross–Motion, Exhibit D at 6.

8. The court notes that among the documents comprising Plaintiff's Motion, Attachment 2, are thirteen pages which list the period of the Town's coverage under Policy No. 04SMP600858 as beginning on February 1, 1971, and expiring on February 1, 1974. Plaintiff's Motion, Attachment 2, at 1–13.

("Table 2") Supplemental Affidavit of John F. Dudziak at ¶ 8 (citing Affidavit of John F. Dudziak, Attachment at 2).

### c. The Scope of RSA 491:22

Plaintiff originally filed its petition under New Hampshire Revised Statutes Annotated (RSA) 491:22.[9] As noted above, the suit underlying plaintiff's declaratory judgment action was brought in federal court. In its March 11, 1993, order, this court dismissed said petition for lack of subject matter jurisdiction based on the New Hampshire Supreme Court's opinion in *Scully's Auto–Marine Upholstery v. Peerless Ins. Co.*, 136 N.H. 65, 611 A.2d 635 (1992) (per curiam), in which the supreme court held "that RSA 491:22 applies only to underlying suits brought in our State courts." *Id.*, 136 N.H. at 67, 611 A.2d at 636.

■ In its motion requesting reconsideration of the March 11, 1993, order, plaintiff contended that this court's jurisdiction was proper under RSA 491:22–c, which provides:

**Availability of Remedy.** The remedy of declaratory judgment to determine the coverage of a liability insurance policy under RSA 491:22, 22–a, and 22–b shall also be available in the United States district court for the district of New Hampshire when that court may properly adjudicate the matter under the laws of the United States.

The court notes that the plain language of RSA 491:22–c confers no broader jurisdiction upon this court than that which is conferred upon a state court under RSA 491:22. Accordingly, the court construes RSA 491:22–c as narrowing the breadth of the New Hampshire Supreme Court's statement in *Jackson v. Federal Ins. Co.*, 127 N.H. 230, 498 A.2d 757 (1985), that "the legislature did not in-

tend to avail litigants in the federal courts of our State declaratory judgment remedy for resolving insurance coverage questions," *id.*, 127 N.H. at 233, 498 A.2d at 759, by providing that this court may hear cases brought under RSA 491:22 where such cases would otherwise be available in a New Hampshire state court; i.e., where the underlying action was brought in a New Hampshire state court. *Scully's, supra.*

### 2. Discussion

·Plaintiff seeks summary judgment on the grounds that (1) the attached portions of Policy No. 08SMP100151 and Policy No. 04SMP600858 demonstrate that for the period from February 1, 1968, to February 1, 1974, defendants provided the Town with liability insurance covering pollution damage at "the 'Town Dump'", Plaintiff's Motion at ¶¶ 3–5; and (2)

[i]t is Mr. Dudziak's expert opinion that [the policies listed in Table 1] provide insurance coverage to the Town of Peterborough for the claims being made against it in Case No. C–90–231[–L] presently pending in this Court.

Plaintiff's Motion at ¶ 8; *see also id.* at 3.

Defendants seek summary judgment on the grounds that (1) "no 'occurrence' resulting in 'property damage' took place during the effective period of the alleged Hartford policies," Defendants' Cross–Motion at 1; and (2) "Plaintiff's claims are barred by the applicable statute of limitations set forth in RSA 491:22," *id.* at 2.

### a. Summary Judgment Standard

Rule 56(c), Fed.R.Civ.P., provides that summary judgment

9. RSA 491:22 provides:
Any person claiming a present legal equitable right or title may maintain a petition against any person claiming adversely to such right or title to determine the question as between the parties, and the court's judgment or decree thereon shall be conclusive. No petition shall be maintained under this section to determine coverage of an insurance policy unless it is filed within 6 months after the filing of the writ which gives rise to the question; provided,

however, that the foregoing prohibition shall not apply where the facts giving rise to such coverage dispute are not known to, or reasonably discoverable by, the insurer until after expiration of such 6 month period; and provided, further, that the superior court may permit the filing of such a petition after such period upon a finding that the failure to file such petition was the result of accident, mistake or misfortune and not due to neglect.

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Further, when a court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

#### b. The Statute of Limitations

■ Defendants contend that the instant action, brought under 28 U.S.C. § 2201, is barred by the six-month limitations period in RSA 491:22. Defendants' Cross–Motion at ¶ 2. "[W]hen a state that has a declaratory remedy withholds it in a particular class of cases in order to vindicate a state substantive policy, such as a limitations policy, it is entirely appropriate for a federal court to assess the impact of its grant of a declaratory remedy on that substantive policy of the state." *118 East 60th Owners, Inc. v. Bonner Properties, Inc.*, 677 F.2d 200, 203 (2d Cir.1982). Accordingly, the court looks to New Hampshire law to determine whether the limitations period in RSA 491:22 should be applied in the instant action.

In *Jackson v. Federal Ins. Co.*, 127 N.H. 230, 498 A.2d 757 (1985), the New Hampshire Supreme Court stated:

Although RSA 491:22 does not afford litigants in pending federal court cases relief, the corresponding federal declaratory judgment action is available. *See* 28 U.S.C.A. § 2201 (1982). That act allows 'any Court of the United States ... [to] declare the rights and other legal relations of any interested party....' *Id.* The declaratory relief under the federal act is limited to 'actual controversies within its jurisdiction,' *id.,* and has been used by litigants in the federal courts to resolve insurance coverage questions. *See Keene Corp. v. Ins. Co. of North America,* 667 F.2d 1034 (D.C.Cir.1981) [*cert. denied,* 455 U.S. 1007 [102 S.Ct. 1644, 71 L.Ed.2d 875] (1982) ]. *The federal declaratory procedure has no six-month filing limitation, and a proceeding is time barred only if the underlying cause of action giving rise to the questions to be resolved is time barred. See Luckenbach Steamship Co. v. United States,* 312 F.2d 545, 548–49 (2d Cir.1963).

In this case, since the litigants could have petitioned for declaratory relief in the federal court where suit was brought, our denial of a State declaratory judgment procedure does not work a hardship on the parties. Further, policies of federalism and comity make it appropriate for this court to allow the federal courts to resolve insurance coverage questions arising from suits over which those courts have exercised jurisdiction.

*Id.,* 127 N.H. at 233–34, 498 A.2d at 759–60 (emphasis added). Based on the foregoing, and in light of the New Hampshire Supreme Court's holding in *Scully's* (quoted *supra* ), the court finds it inappropriate to apply the limitations period in RSA 491:22 in the instant action. Therefore, defendants' motion for summary judgment must be denied insofar as it is based on same.

#### c. The Dudziak Affidavits

[3] Plaintiff contends that

[t]o the extent [Mr. Dudziak's] Affidavits attest to the existence and probable terms of insurance policies referenced in the files he examined, but for which no actual policies exist, his Affidavits are the best evidence of the terms and coverages provided by said policies.

Plaintiff Town Of Peterborough's Objection To Defendants' Motion To Strike Affidavit of John F. Dudziak at 2. However, in opining that the Town enjoyed coverage under the policies listed in Tables 1 and 2, Mr. Dudziak failed to discuss the contents of the documents upon which this opinion is based. *See*

Supplemental Affidavit of John F. Dudziak *and* Affidavit of John F. Dudziak; Affidavit of John F. Dudziak, Attachment at 2.

When a party moves for summary judgment under Rule 56,

> [s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein.

Rule 56(e), Fed.R.Civ.P.

> Rule 56(e) ... provides that affidavits supporting and opposing motions for summary judgment must do more than present something that will be admissible in evidence. They shall 'set forth facts' and by implication in the case of experts (who are not 'fact witnesses') a process of reasoning beginning from a firm foundation.... An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process. See *Richardson v. Richardson–Merrell, Inc.,* 857 F.2d 823, 829–32 (D.C.Cir.1988) [*cert. denied,* 493 U.S. 882, 110 S.Ct. 218, 107 L.Ed.2d 171 (1989) ], holding that an expert's declaration, full of assertion but empty of facts and reasons, won't get a case past a motion for summary judgment, for the judge must 'look behind [the expert's] ultimate conclusion ... and analyze the adequacy of its foundation.' *Id.* at 829.

*Mid–State Fertilizer v. Exchange Nat'l Bank,* 877 F.2d 1333, 1339 (7th Cir.1989). In light of the foregoing, and bearing in mind that the Dudziak affidavits omit discussion of the contents of the documents upon which said opinion is based, the court finds that Mr. Dudziak has failed to support this opinion

with "a process of reasoning beginning from a firm foundation," as required by Rule 56(e). *See id.* at 1338–40 (expert affidavit held insufficient under Rule 56(e) because expert " '[did] not recite any of the specific facts or steps in his reasoning' ") (citing the district court's opinion in the same case at 693 F.Supp. 666, 670 (N.D.Ill.1988)). Therefore, the court finds that under Rule 56(e), the Dudziak affidavits fail to provide evidence sufficient for a finding that the Town was covered under the policies listed in Tables 1 and 2.[10]

### d. Plaintiff's Burden of Proof

■ Plaintiff contends that the existence of the policies listed in Tables 1 and 2 must be assumed for purposes of the instant motions for summary judgment because "the burden of establishing non-coverage is upon the insurer." Plaintiff's Opposition Memo at 11–12 (citing RSA 491:22–a[11] and *U.S. Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc.,* 123 N.H. 148, 153, 461 A.2d 85, 87 (1983)). However, plaintiff has not presented, nor has the court discovered, any New Hampshire cases which address the question whether New Hampshire law places the burden of proving the *nonexistence* of an insurance policy upon the insurer.[12]

" 'In the absence of a definitive ruling by the highest state court, a federal court may consider "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand," taking into account the broad policies and trends so evinced.' " *Redgrave v. Boston Symphony Orchestra, Inc.,* 855 F.2d 888, 903 (1st Cir.1988) (*en banc* ) (quot-

---

**10.** Accordingly, defendants' motion to strike the affidavit of John F. Dudziak is denied as moot.

**11.** Section 491:22–a provides that

In any petition under RSA 491:22 to determine the coverage of a liability insurance policy, the burden of proof concerning the coverage shall be upon the insurer whether he institutes the petition or whether the claimant asserting the coverage institutes the petition.

**12.** Rather, as noted earlier, plaintiff cites *Johnson Shoes, supra,* in which the New Hampshire Supreme Court applied the above-quoted rule *in the process of interpreting an existing policy* is-

sued by the plaintiff. Further, in applying said rule, the supreme court cited *Robbins Auto Parts, Inc. v. Granite State Ins. Co.,* 121 N.H. 760, 764, 435 A.2d 507, 509 (1981); RSA 491:22–a (Supp. 1979). In *Robbins Auto Parts, Inc., supra,* the supreme court did not hold that New Hampshire law places the burden of proving the non-existence of an insurance policy upon the insurer. Rather, it held that *"[i]n interpreting an insurance policy,* we are cognizant that the burden of establishing non-coverage is upon the insurer." *Id.,* 121 N.H. at 762, 435 A.2d at 509 (emphasis added).

ing *Michelin Tires, Etc. v. First Nat'l Bank of Boston,* 666 F.2d 673, 682 (1st Cir.1981) (quoting *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 663 (3d Cir.1980))), *cert. denied,* 488 U.S. 1043, 109 S.Ct. 869, 102 L.Ed.2d 993 (1989); *see also* 19 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4507 (West 1982 & Supp.1992) ("In vicariously creating state law for purposes of deciding the case before it, the federal court may consider all available legal sources . . ."). Further, "[w]here unsettled questions are involved," a federal court can assume that the state's "highest court would adopt the view which, consistent with its precedent, seems best supported by the force of logic and the better-reasoned authorities." *Ryan v. Royal Ins. Co. of America,* 916 F.2d 731 (1st Cir. 1990).

Accordingly, the court determines that the New Hampshire Supreme Court would adopt the view that in suits to establish coverage under an insurance contract or policy, the party seeking to affirmatively establish coverage bears the initial burden of proving the existence and validity of the policy or contract at issue. 46 C.J.S. *Insurance* § 1316 (1946 & Supp.1992) (citing *Hartford Acc. & Indem. Co. v. Spain,* 520 S.W.2d 853 (Tex. Civ.App.1975), *writ ref'd n.r.e.* (July 7, 1975) *and reh'g of writ of error overruled* (July 23, 1975); *Saggau v. State Farm Mut. Ins. Co.,* 16 Ariz.App. 361, 493 P.2d 528 (1972); *Barnes v. Motorists Mut. Ins. Co.,* 29 Ohio App.2d 167, 279 N.E.2d 635 (1971); *Rothstein v. Aetna Ins. Co.,* 216 Pa.Super. 418, 268 A.2d 233 (1970); *B.T.U. Insulators, Inc. v. Maryland Cas. Co.,* 175 So.2d 899 (La.Ct. App.1965); *Epstein v. Great Am. Ins. Co.,* 54 Tenn.App. 447, 392 S.W.2d 331 (1965); *Fuller v. Eastern Fire & Cas. Co.,* 240 S.C. 75, 124 S.E.2d 602 (1962); *Fallins v. Durham Life Ins. Co.,* 247 N.C. 72, 100 S.E.2d 214 (1957); *New Hampshire Fire Ins. Co. v. Walker,* 178 Ark. 319, 11 S.W.2d 772 (1928); *Hawkeye Clay Works v. Globe & Rutgers Fire Ins. Co.,* 202 Iowa 1270, 211 N.W. 860 (1927); *Kitchen v. Yorkshire Ins. Co.,* 226 Ky. 376, 10 S.W.2d 1074 (1928)); *see also Emons Indus. v. Liberty Mut. Fire Ins.,* 545

F.Supp. 185, 188 (S.D.N.Y.1982) ("New York, like most jurisdictions, places upon plaintiff in an action based on an insurance contract the burden of proof to establish the existence of the policy sued upon and the provisions upon which the suit is based." (citing *Lapierre, Litchfield & Partners v. Continental Casualty Co.,* 59 Misc.2d 20, 297 N.Y.S.2d 976, 979 (N.Y.Sup.Ct.1969), *modified on other grounds and aff'd,* 32 A.D.2d 353, 302 N.Y.S.2d 370 (1969)); *Chix v. Georgia Farm Bureau Ins.,* 150 Ga.App. 453, 258 S.E.2d 208 (1979). In making this determination, the court is particularly mindful that in the absence of such an allocation of the burden of proof, New Hampshire courts could face the inappropriate task of determining an insurer's duties under an alleged yet factually nonexistent insurance policy.

■ Other than the contents of the Dudziak affidavits, discussed above, plaintiff has failed to present any evidence of the existence of the policies listed in Table 1. Therefore, based on the evidence before it, the court finds that plaintiff has failed to present evidence sufficient for a finding that said policies exist. Accordingly, and given that Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *Celotex Corp. v. Catrett, supra,* 477 U.S. at 322, 106 S.Ct. at 2553 the court grants defendants' motion for summary judgment with respect to the policies listed in Table 1.[13]

e. *The Policies Numbered "08SMP905678", "08SMP100151" and "04SMP600858"*

(1) *Hartford's putative liability*

Bearing in mind that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson, supra,* the court finds plaintiff has presented evidence sufficient for a finding that the Town enjoyed coverage (1) under Policy No. 08SMP905678 for the period from

---

**13.** Having determined that plaintiff is not "entitled to summary judgment as a matter of law" with respect to the policies listed in Table 1, the court must deny plaintiff's motion for summary judgment with respect to said policies. Rule 56(c).

February 1, 1965, to February 1, 1968, under the terms specified in Policy No. 08SMP100151, *see* Plaintiff's Motion, Attachment 1, at 1 (indicating that Policy No. 08SMP100151 is a continuation of Policy No. 08SMP905678); (2) under Policy No. 08SMP100151 for the period from February 1, 1968, to February 1, 1971, *see* Plaintiff's Motion, Attachment 1, at 1; and (3) under Policy No. 04SMP600858 for the period from February 1, 1971, to February 1, 1974, *see* Plaintiff's Motion, Attachment 2, at 1–13.[14] As noted above, Hartford's putative liability under these policies is triggered by "bodily injury or property damage ... caused by an occurrence." *See* Plaintiff's Motion, Attachment 1, at 3.

### (2) Timing the Occurrence

■ In *Suburban Constr. Co. v. Hartford Fire Ins.*, Civil Action No. 90–379–SD (D.N.H. July 28, 1992), this court held that, under New Hampshire law, "the time of an 'occurrence', within the meaning of an indemnity policy, is 'not the time the wrongful act was committed, but the time when the complaining party was actually damaged.' " *Suburban, supra*, at 6–7 (quoting *Continental Cas. Co. v. Gilbane Bldg. Co.*, 391 Mass. 143, 461 N.E.2d 209, 215 (1984)). This court then posed the question, " '[w]hen does damage actually occur, as a matter of law, in a situation where damage was actually occurring, as a matter of fact, for a period of [ ] years.' " *Id.* at 7 (quoting *Bartholomew v. Insurance Co. of No. America*, 502 F.Supp. 246, 252 (D.R.I.1980)), and concluded that New Hampshire has adopted the "manifestation" rule, which holds that the time of the occurrence is the time when the property damage first becomes known to the claimant. *Suburban, supra*, at 7–8.

Noting that the Town alleges that property damage was not discovered until 1986, "after the termination of any policy issued by Hartford to the Town of Peterborough," Defen-

dants' Cross–Motion Memo at 9, defendants contend that "under *Suburban*, Hartford is entitled to summary judgment as a matter of law because there is no evidence that property damage occurred during Hartford policy periods." *Id.*

However, the court notes that in *Johnson Shoes, supra*, the New Hampshire Supreme Court held that there was sufficient evidence for a finding that an occurrence took place during a policy coverage period where coverage under the insured's comprehensive general liability policy ended in November 1972, but in 1971 a maintenance man employed by the insured "had reported to his superiors that he believed that the underground tank was leaking," even though the property damage resulting from said leak did not become manifest until August 1973.[15] *Id.*, 123 N.H. at 150–51, 153, 461 A.2d at 86, 88. If New Hampshire had adopted the manifestation rule, the *Johnson Shoes* court would have found, as a matter of law, that the damage to the "neighboring property" did not occur until August 1973 because said damage did not become manifest until that date. *See* Richard C. Tinney, Annotation, *Event as Occurring Within Period of Coverage of "Occurrence" and "Discovery" or "Claims Made" Liability Policies*, 37 A.L.R.4th 382, 406 § 5[b] (1985) (citing a series of cases "involving wrongful conduct which was continuous or repeated, or set in motion a process which ultimately resulted in injury to person or property," in which "the courts held that, in the particular circumstance, the event which would trigger liability under an 'occurrence' type policy was the occurrence or manifestation of the ultimate injury").

Recognizing that the *Johnson Shoes* court appears to have fixed the time of the occurrence in that case according to the time of the alleged wrongful conduct which purportedly caused the ultimate property damage, the court acknowledges its error in *Suburban*, and now finds that in cases involving the

---

14. The court notes that plaintiff has failed to present sufficient evidence for a finding that the Town enjoyed coverage for a specific period of time under any other Hartford policy.

15. In August 1973, after a period of heavy rains, oil which had apparently escaped from an underground storage tank, located on the leased premises, spilled over onto neighboring

property up to one-half mile away. Previously, in 1971, the maintenance man for Johnson Shoes, Inc. had reported to his superiors that he believed that the underground oil tank was leaking.
*Johnson Shoes, supra*, 123 N.H. at 151, 461 A.2d at 86.

delayed manifestation of environmental contamination, New Hampshire follows the rule that the time of the occurrence is the time of the wrongful act which caused the ultimate damage. *Johnson Shoes, supra,* 123 N.H. at 150–51, 153, 461 A.2d at 86, 88; *but see Peerless Ins. Co. v. Clough,* 105 N.H. 76, 78, 193 A.2d 444, 446 (1963) (in case involving alleged negligent construction of fireplaces leading to fires in residences, supreme court applied the rule "that the time of the occurrence resulting in the loss or damage, and not the time of the negligence, determines whether there is coverage under the policy").

■ Accordingly, defendants' motion for summary judgment must be denied to the extent that there is sufficient evidence before the court for a finding that the contamination of the site of the former town dump was caused by wrongful conduct that occurred during a period in which plaintiff was covered by a Hartford comprehensive general liability policy. Considering that plaintiff does not allege that hazardous substances were deposited at the site of the former town dump after 1970, the court grants defendants' motion for summary judgment with respect to Policy No. 04SMP600858, which purportedly provided coverage for the period from February 1, 1971, to February 1, 1974.[16]

■ Further, in light of New Hampshire's adherence to the rule that in cases involving the delayed manifestation of environmental contamination, the time of the occurrence is the time of the wrongful conduct which caused the ultimate damage, *see Johnson Shoes, supra,* the court finds that plaintiff has presented evidence sufficient for a finding that the contamination at the site of the former town dump was caused by wrongful conduct that occurred during the period in which the Town was purportedly covered under Policy No. 08SMP905678 and Policy No. 08SMP100151. *See* Deposition Transcript of Donald H. Parkhurst at 11–19; Deposition Transcript of Alden S. Brunnell at 4–5, 7, 10, 19–22; Affidavit of Peter J. McGlew at ¶¶ 6–7A–7B. Therefore, defendants' motion for summary judgment must be denied with respect to said policies.

■ However, because the court finds that genuine issues of material fact exist as to (1) whether the purported wrongful conduct occurred in the manner and at the dates alleged and (2) whether such conduct caused the alleged ultimate damage, plaintiff's motion for summary judgment must be denied. The court further finds that genuine issues of material fact exist as to the period of coverage and terms of Policy No. 08SMP905678.

*f. Attorney's Fees*

■ In its petition, plaintiff requests that the court award it costs and reasonable attorney's fees related to the instant action. Petition for Declaratory Judgment at 3. In their supplemental motion for partial summary judgment pursuant to the April 29, 1993, order, defendants seek a judgment denying plaintiff's claim for attorney's fees and costs.

"The availability of attorney's fees in diversity cases depends upon state law, *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975); and this holds true in declaratory judgment actions." *Titan Holdings Syndicate v. City of Keene, N.H.,* 898 F.2d 265, 273 (1st Cir.1990).

Although attorney's fees are available pursuant to RSA 491:22–b to a party in an action brought under 28 U.S.C. § 2201 where such action could have been brought under RSA 491:22, *id.* 898 F.2d at 273 n. 8, 273–74, said remedy is not available to a party who "could not have invoked § 491:22." *Volpe v. Prudential Property & Cas. Ins. Co.,* 802 F.2d 1, 4–5 (1st Cir.1986).

Accordingly, and bearing in mind that plaintiff could not have invoked RSA 491:22, the court finds, as a matter of law, that plaintiff is not entitled to attorney's fees under RSA 491:22–b, and defendants' supplemental motion for partial summary judgment must be granted.

*Conclusion*

For the reasons stated herein, the court (1) denies plaintiff's motion for summary judgment (document no. 14); (2) grants defendants' cross-motion for summary judgment

---

**16.** Accordingly, plaintiff's motion for summary judgment with respect to said policy must be

denied. Rule 56(c), Fed.R.Civ.P.

(document no. 15) with respect to all alleged Hartford policies except Policy No. 08SMP905678 and Policy No. 08SMP100151; (3) denies defendants' motion to strike the affidavit of John F. Dudziak as moot (document no. 13); and (4) grants defendants' supplemental motion for partial summary judgment (document no. 39).

SO ORDERED.