EnergyNorth v. AEGIS                    CV-97-064-M    01/31/01
                        UNITED STATES DISTRICT COURT

                        DISTRICT OF NEW HAMPSHIRE


EnergyNorth Natural Gas, Inc.,
        Plaintiff

        v.                                    Civil No. 97-64-M
                                              Opinion No. 2001 DNH 021
Associated Electric & Gas
Insurance Services Limited, et al.,
        Defendants


                            **O R D E R**


        Having carefully considered plaintiff's motion to reconsider

(document no. 280), and having again considered applicable New

Hampshire law in light of the points made, as well as others not

specifically raised, I am persuaded that, because New Hampshire's

law is unclear, substantially identical insurance policy coverage

language has been construed differently by judges of this court.

        Upon further reflection, I am not confident that the New

Hampshire Supreme Court adopted a "wrongful act" trigger-of-

coverage theory in Johnson Shoes[1], notwithstanding the late Chief

Judge Devine's holding in Town of Peterborough v. Hartford Fire

―――――――――――――――――

        [1]  U.S. Fidelity & Guar. Co., Inc. v. Johnson Shoes, Inc.,
123 N.H. 148 (1983).

Ins. Co., 824 F.Supp. 1102, 1111-12 (D.N.H. 1993)("in cases involving the delayed manifestation of environmental contamination, New Hampshire follows the rule that the time of the occurrence is the time of the wrongful act which caused the ultimate damage.").

The insurer in Johnson Shoes denied coverage in an environmental contamination case on grounds that the policy only covered "occurrences" taking place during the policy period. "Occurrence" was defined as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Johnson Shoes, 123 N.H. at 153. Oil "had apparently escaped from an underground storage tank on premises leased by Johnson Shoes, and, after a period of heavy rain [in 1973], spilled over onto neighboring property up to one-half mile away." Johnson Shoes, 123 N.H. at 151. By that time – the time of "manifestation" – the policy had terminated. But, earlier in 1971 [while the policy was in effect], a company maintenance man had reported to his superiors at Johnson Shoes that he believed the underground oil tank was leaking. The trial

2

court found that the "occurrence" (presumably, discovery of the leak) was within the policy period.  On appeal, the New Hampshire Supreme Court affirmed the trial court's determination.  It did so, however, without adopting a specific trigger-of-coverage legal theory, and without much explanation beyond noting that "there was sufficient evidence before the trial court to support its finding that the occurrence took place during the coverage period, and [the insurer] failed to meet its burden of establishing noncoverage with regard to the timing of the occurrence."  Johnson Shoes, 123 N.H. at 153.

In Town of Peterborough, Judge Devine noted that a year earlier he had ruled that New Hampshire followed the "manifestation" trigger-of-coverage theory (i.e., that the time of the "occurrence," as that term relates to insurance coverage for environmental damage claims, is the time when the property damage first becomes known to the claimant).  See Suburban Construction Co. v. Hartford Fire Ins., Civil Action No. 90-379-SD (D.N.H. July 28, 1992).  But, Judge Devine concluded in Peterborough that the Johnson Shoes result was inconsistent with a manifestation trigger-of-coverage legal theory, and was more

3

consistent with a "wrongful act" trigger theory.  In my Order of September 30, 2000, I followed Judge Devine's lead, agreeing that Johnson Shoes necessarily adopted a wrongful act trigger theory.

Chief Judge Barbadoro has, however, read Johnson Shoes another way.  In EnergyNorth Natural Gas, Inc. v. AEGIS, et al., Civil Action No. 95-591-B (September 30, 1998), Chief Judge Barbadoro held that "at most [Johnson Shoes] stands for the proposition that coverage can be triggered under an occurrence-based policy by the occurrence of property damage while the policy is in effect."  That is, Johnson Shoes does not decisively adopt any recognized trigger-of-coverage rule, but it is not inconsistent with an "injury in fact" theory – i.e., the occurrence causing property damage took place when the oil leaked into the environment (as opposed to, for example, when the leak was actually discovered).  But, Johnson Shoes is arguably consistent as well with a "wrongful act" theory, a "first discovery" theory, a "knew or should have known" theory (i.e., the occurrence took place when the insured knew or should have known of the property damage); and a "continuous trigger" theory (i.e., the occurrence took place when the property was exposed to

4

the contaminant, and as the contaminant migrated, and at the time of manifestation).

There is also another possibility. New Hampshire might follow all rational trigger-of-coverage legal theories in environmental contamination cases. As plaintiffs note, New Hampshire's general rule relative to construction of insurance policy language is set out in Trombly v. Blue Cross/Blue Shield of New Hampshire-Vermont, 120 N.H. 764 (1980), and requires that courts "honor the reasonable expectations of the policy holder." Id., at 771 (quoting Magulas v. Travelers Ins. Co., 114 N.H. 704, 706 (1974)). In Trombly the court held that when terms of an insurance contract are susceptible of two (or more) reasonable interpretations, and one (or more) would provide coverage, the interpretation that affords coverage must be adopted. While it might be unusual, still, the New Hampshire rule might be that insurance policy language must be construed consistently with any rational and reasonable trigger-of-coverage legal theory under which the disputed terms would afford coverage, on grounds that the critical terms ("occurrence" and "accident") are necessarily ambiguous since they can be reasonably construed under one

5

recognized trigger theory in a way that affords coverage and under another theory in a way that precludes coverage. Thus, under Trombly, the facts peculiar to each case could dictate which legal theory of coverage the court would adopt, in order to provide coverage in the face of contextually ambiguous terms.

Which legal trigger theory to apply is critical to proper construction of the coverage language in both the accident-based and occurrence-based policies at issue here. In nearly identical circumstances, the Court of Appeals for the First Circuit made it clear that "[t]he district court was obligated to determine which of these trigger-of-coverage theories the [State] Supreme Court would apply" in the case. CPC International, Inc. v. Northbrook Excess & Surplus Ins. Co., 46 F.3d 1211 (1st Cir. 1995). In CPC International, like this case, Rhode Island law was found to be unclear, and pertinent state decisions were found to "raise more questions than they answer." Id. at 1221. Recognizing that different jurisdictions have adopted at least seven different legal theories governing when an occurrence policy provision is triggered in the context of environmental damage claims, and finding Rhode Island law on this point was "unclear" with respect

to the trigger-of-coverage issue, and concluding that the issue was determinative of the case, the court of appeals certified the trigger question to the Rhode Island Supreme Court. See CPC International, 46 F.3d at 1219-1220.

In this case, too, New Hampshire's applicable precedent raises more questions than it answers; the trigger-of-coverage theory New Hampshire follows will resolve the coverage issue in this case; this court is obligated to apply New Hampshire law as the New Hampshire Supreme Court determines it to be; this court is obligated to determine which legal trigger theory New Hampshire would apply, but cannot reliably predict New Hampshire's view based on existing precedent; and, important principles of federalism counsel in favor of certifying the trigger-of-coverage issue to the Supreme Court.

One final clarifying point with regard to plaintiff's motion to reconsider is, perhaps, worth making. With regard to the "occurrence-based" policies, the coverage provisions do not strike me as ambiguous with regard to whether the "event" giving rise to an "occurrence" must take place within the policy period, when those provisions are read in context, for the reasons given

7

in the court's Order dated September 29, 2000, (document no. 276).  In the end, on that issue plaintiff has not offered a reasonable or plausible interpretation of policy language, when the language of the policy is considered as a whole.  See Trombly v. Blue Cross/Blue Shield of New Hampshire - Vermont, 120 N.H. 764, 768 (1980).  Any potential ambiguity regarding whether coverage extends to occurrences in which the requisite "event" took place before commencement of the policy term is, in my view, resolved by the interplay between the coverage language of paragraphs 1 and 4, and the provision that, "This policy . . . shall apply to occurrences happening during the currency hereof." See Order, September 29, 2000, at 9-10.

The additional point is this.  Paragraph 4 describes what the policy covers, making clear that the general coverage includes not only liability for property damage imposed by law, but also, on an equal footing, liability assumed by contract (including both contracts "now in effect [when the policy term began]" and those that "become effective while this Policy is in force").  That is, the insured's potential property damage liability for "occurrences" (which must happen during the policy

8

period) is covered, whether contractually assumed or imposed by law, "provided always" that the coverage extended by the policy does not apply to "any event which occurred prior" to the commencement of the policy term, whether such event gives rise to contractual or legally imposed liability.

The court is persuaded that the policy as a whole is clear, and paragraph 4 actually underscores the parties' intent that coverage for contractually assumed liability and legally imposed liability be coextensive. Nevertheless, plaintiff argues that the language of paragraph 4 (i.e., "provided always, however, that no liability shall attach to the underwriter by virtue of this paragraph, in respect of any event which occurred prior to the attaching date of this policy") (emphasis added) should not be construed as a reiteration, and specific application of the general requirement of coverage under the policy – that the "occurrence" ("event" giving rise to "happening") must happen during the policy period – to contractually assumed liability. Instead, plaintiff urges a reading of paragraph 4 that would create two distinct and substantively different species of coverage in the policy. One species would cover legally imposed

9

liability for property damage, extending coverage to "one happening or a series of happenings arising out of one event," where the event can occur <u>before</u> the policy period begins. A distinct second species would cover contractually assumed liability for property damage, extending coverage to "one happening or series of happenings arising out of one event," but where the event must occur <u>during</u> the policy period.

Importantly, however, plaintiff's proffered construction is not <u>reasonable</u>, reading the policy as a whole, as it must be if the <u>Trombly</u> presumption of coverage arising from ambiguity is to be effectively invoked. In other words, beyond merely asserting that its interpretation of the policy language is "possible," plaintiff has not shown that the necessary result of its reading – creation of two distinct species of coverage – would lead to anything other than illogical, unintended, or even absurd results. <u>See, e.g.</u>, <u>Curtis v. Guaranty Trust Life Ins. Co.</u>, 132 N.H. 337, 341-42 (1989) (noting that the insured's proposed construction of the policy language must be "reasonable," and observing that the court "will not create an ambiguity simply to resolve it against the insurer," and rejecting plaintiff's

10

proposed construction of the policy because it would lead to "absurd" and "illogical" results). See also City of Manchester v. General Reinsurance Corp., 127 N.H. 806, 809-10 (1986).

Contrary to plaintiff's assertions, the policy language, taken as a whole, reveals two things. First, it evinces an intent by the parties to obtain and extend uniform coverage for property damage liability, whether imposed by operation of law or assumed by contract. Second, that language also reveals the parties' unmistakable intent that coverage extend only to "occurrences" that are precipitated by "events" that transpire within the policy period. Read in context then, the policy provisions are not ambiguous, and the "event" giving rise to a happening or series of happenings (i.e., an "occurrence") must take place within the policy period for coverage to obtain.

Unfortunately, however, the court's construction does not resolve the bottom line coverage issue with regard to either the accident-based or the occurrence-based policies at issue here because, depending on which trigger-of-coverage legal theory New Hampshire follows, the "event" could be found to have taken place either during or outside the policy period.

11

The short of it is, I am no longer persuaded that the New Hampshire Supreme Court resolved the trigger-of-coverage issue in Johnson Shoes and, while each theory employed in prior cases in this court could be correct, each is just as arguably incorrect. And, other possible theories could be correct. See e.g., Peerless Ins. Co. v. Clough, 105 N.H. 76 (1963) ("the time of the occurrence resulting in the loss or damage . . . determines whether there is coverage under the policy," suggesting that in environmental damage cases, the time of the spill might control).

**Conclusion**

The motion for reconsideration (document no. 280) is granted in part. The court has reconsidered the issues presented. However, in light of the circuit court's opinion in CPC International, Inc. v. Northbrook Excess & Surpluss Ins. Co., supra, I believe that certification to the New Hampshire Supreme Court of the legal trigger-of-coverage issue presented in this case is appropriate, and even mandated. Consequently, the court proposes to certify to the New Hampshire Supreme Court a question or questions designed to determine the trigger-of-coverage legal

12

theory the State of New Hampshire would follow in resolving this coverage dispute.

Accordingly, on or before March 2, 2001, each party shall show cause why the court should not certify the trigger-of-coverage issue to the New Hampshire Supreme Court, if that is their position, and, notwithstanding any opposition to certification, each party shall also propose question(s) of law for certification, and shall file a statement of relevant facts (preferably stipulated) meeting the requirements of New Hampshire Supreme Court Rule 34, for consideration by the court (i.e., the parties should assume the issue will be certified).

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 31, 2001

cc:  Bruce W. Felmly, Esq.
     Doreen F. Connor, Esq.
     John A. Guarascio, Esq.
     Michael F. Aylward, Esq.
     Kimball A. Lane, Esq.

13